Cathy Ann STEVENS and Rosalie McRoberts, on behalf of themselves, their family members, and the class they represent

Sonya Smith, Plaintiff-Intervenor,

v.

Joseph A. CALIFANO, Jr., Secretary of Health, Education and Welfare, Individually and in official capacity and Kenneth Creasy, Director, Ohio Department of Public Welfare, Individually and in official capacity.

Civ. A. No. C77–103A.

United States District Court,
N. D. Ohio, E. D.

April 19, 1978.

Anthony Touschner, Summit County Legal Aid Society, Akron, Ohio, Stephan A. Landsman, Legal Clinic, Cleveland, Ohio, for plaintiffs.

Charles E. Guerrier, Woman's Law Fund, Inc., Cleveland, Ohio, for plaintiff-intervenor.

William J. Anderson, Asst. Atty. Gen., Columbus, Ohio, Barbara Allen Babcock, Asst. Atty. Gen., David J. Anderson, William Z. Elliott, Dept. of Justice, Washington, D. C., for defendants.

## ORDER

CONTIE, District Judge.

Invoking the Court's jurisdiction under 28 U.S.C. §§ 1331, 1343(3) and (4), and 1361, plaintiffs initiated this action to redress alleged deprivations of their constitutional rights. This case is presently before the Court upon the parties' cross motions for summary judgment and certain stipulations of fact.

## I. PARTIES

The named plaintiffs and plaintiff-intervenor [1] are indigent residents of the State

1. The Court granted plaintiff-intervenor Sonya Smith's motion to intervene on December 8, 1977.

of Ohio who have applied for and been denied benefits under the Aid to Families with Dependent Children-Unemployed Fathers Program (AFDC–U). On November 11, 1977, the Court granted plaintiffs' motion to certify this action as a class action pursuant to Rule 23(b)(2), Federal Rules of Civil Procedure. Plaintiffs' class consists of:

> All persons in the State of Ohio who have in the past or who are presently being denied Aid to Families with Dependent Children—Unemployed Fathers benefits in compliance with the provisions of Section 407 of the Social Security Act of 1935, 42 U.S.C. § 607, and the regulations promulgated thereunder, and who would be eligible for assistance under said program but for the sex of the unemployed parent.

Defendants in the present action are the Secretary of the Department of Health, Education and Welfare, Joseph A. Califano, Jr., individually and in his official capacity, and the Director of the Ohio Department of Public Welfare, Kenneth Creasy, individually and in his official capacity.

## II. FACTS

The Aid to Families with Dependent Children (AFDC) program was first established in 1935. Said program provided benefits to families with a needy child:

> (1) who has been deprived of parental support or care by reason of the death, continued absence from the home, or physical or mental incapacity of a parent, and who is living with his father, mother, grandfather, grandmother, brother, sister, stepfather, stepmother, stepbrother, stepsister, uncle, aunt, first cousin, nephew, or niece, in a place of residence maintained by one or more of such relatives as

his or their own home, and (2) who is (A) under the age of eighteen, or (B) under the age of twenty-one and (as determined by the State in accordance with standards prescribed by the Secretary) a student regularly attending a school, college, or university, or regularly attending a course of vocational or technical training designed to fit him for gainful employment; . . .

Social Security Act of 1935 § 406, 42 U.S.C. § 606.

The present action involves the constitutionality of Section 407 of the Social Security Act, 42 U.S.C. § 607 (hereinafter Section 607), which enlarges the above quoted definition to include families with a needy child:

> . . . who has been deprived of parental support or care by reason of the unemployment (as determined in accordance with standards prescribed by the Secretary) of his father.[2]

In essence, Section 607 enlarges a program which would only include one-parent families to include certain two-parent families. The two parent families so included are families of unemployed fathers. Plaintiffs claim that inasmuch as Section 607 permits needy families to qualify for benefits based upon the unemployment of the male parent but not upon the unemployment of the female parent, it violates the Due Process Clause of the Fifth Amendment.

Plaintiffs further contend that the regulation promulgated in furtherance of the Act, 45 C.F.R. § 233.100, "Dependent Children of Unemployed Fathers," is also violative of the Due Process Clause of the Fifth Amendment. Said regulation, written and administered by the Secretary of the Department of Health, Education and Welfare, outlines the requisites that a state Aid

---

2. The full text of 42 U.S.C. § 607(a) is as follows:

> The term "dependent child" shall, notwithstanding section 606(a) of this title, include a needy child who meets the requirements of section 606(a)(2) of this title, who has been deprived of parental support or care by rea-

> son of the unemployment (as determined in accordance with standards prescribed by the Secretary) of his father, and who is living with any of the relatives specified in section 606(a)(1) of this title in a place of residence maintained by one or more of such relatives as his (or their) own home.

**1316**

to Families with Dependent Children-Unemployed Fathers (AFDC–U) program must meet to receive federal funding.[3] The regulation provides that funding is available for programs that furnish aid to families with unemployed fathers, but does not make any provision for aid to families with unemployed mothers.

The individual States are not required to participate in the AFDC–U program. If they choose to so participate, however, the provisions of Section 607 and Section 233.-100 are mandatory.

The State of Ohio has chosen to participate in the federal AFDC–U program and has done so by enactment of Chapter 5107 of the Ohio Revised Code. Chapter 5107, is not presently in issue.[4] The regulations implementing Chapter 5107, however, are in issue. Said regulations, Ohio Public Assistance Manual (OPAM) § 314.3, were issued by the Ohio Department of Public Welfare.[5] Pursuant to Section 314.3, benefits are made available only to families of unemployed fathers. Plaintiffs contend Section 314.3 is violative of the Equal Protection Clause of the Fourteenth Amendment.

The current Ohio Plan for AFDC–U benefits has been approved by the Secretary of the Department of Health, Education and Welfare and is presently being implemented through the Director of the Ohio Department of Public Welfare in accordance with 42 U.S.C §§ 601–610, 45 C.F.R. § 233.100, and OPAM § 314.3.

To be eligible to receive benefits pursuant to the AFDC–U program a family must meet a number of requirements. First, a family must include a "needy dependent"

child or children. The individual States define needy for the purposes of the AFDC–U program. Second, the father must be "unemployed." Unemployed is defined by 45 C.F.R. 233.100 as being "employed less than 100 hours a month." Third, the father must have a recent connection with the workforce.[6] The plaintiffs in the present action, but for the sex of the unemployed parent, would qualify for benefits under the AFDC–U program.

Ohio residents who qualify for AFDC–U benefits, in addition to receiving monthly payments under said program, are automatically eligible to receive Medicaid assistance.[7] If a family which received AFDC–U benefits for at least three months is no longer eligible because of the re-employment of the father, said family nevertheless remains eligible for Medicaid benefits for an additional four months.

By the present action, plaintiffs seek essentially three types of relief: a declaratory judgment that the AFDC–U program, as presently implemented, is violative of the Due Process Clause of the Fifth Amendment and the Equal Protection Clause of the Fourteenth Amendment; a mandatory injunction requiring inclusion of plaintiffs, and the class they represent, within the AFDC–U program; and recovery of their attorneys' fees and the costs incurred in bringing this action.

## III. DISCUSSION

### A

■ As found above, the AFDC–U program provides benefits to families with an

---

3. For the text of Section 233.100(c), see Appendix A.

4. Chapter 5107 does not, on its face, contain a gender-based classification. Chapter 5107.03, however, incorporates the classification found in 42 U.S.C. § 607. For the text of Chapter 5107.03, see Appendix B.

5. Ohio Public Assistance Manual Section 314.3 provides in part:
   Work history requirement in ADC–U must be determined at every application. The male

parent shall have established a prior connection with the labor force . . . .

6. This requirement is found at 42 U.S.C § 607(b). For the text of Section 607(b), see Appendix C.

7. This is mandated by Ohio Public Assistance Manual Section 370.1. For the text of Section 370.1, see Appendix D.

unemployed father who has the requisite attachment to the workforce, but not to families with an unemployed mother with the same attachment to the workforce. It is clear, therefore, that the legislation "establishes a classification subject to scrutiny under the Equal Protection Clause." *Reed v. Reed*, 404 U.S. 71, 75, 92 S.Ct. 251, 253, 30 L.Ed.2d 225 (1971).[8]

Not all classifications subject to scrutiny under the Equal Protection Clause, however, are invalid. Further, some classifications are more obnoxious than others. More obnoxious classifications are subjected to closer scrutiny than less offensive classifications. See *Craig v. Boren*, 429 U.S. 190, 97 S.Ct. 451, 464–65, 50 L.Ed.2d 397 (Stevens, J., concurring). For example, classifications based on race are subject to "strict scrutiny" whereas most classifications are subject only to a "rational basis test." Classifications based upon sex are less offensive than classifications based on race but more obnoxious than classifications based upon such things as intelligence or physical ability. Gender-based classifications, therefore, are subjected to a test more stringent than the "rational basis test" but less stringent than "strict scrutiny." The Supreme Court, in *Craig v. Boren*, 429 U.S. 190, 197, 97 S.Ct. 451, 457, 50 L.Ed.2d 397 (1976), adopted a two-pronged "middle test" for gender-based classifications: "To withstand constitutional challenge, previous cases establish that classifications by gender must serve important governmental objectives and must be sub-stantially related to achievement of those objectives." See also *Califano v. Webster*, 430 U.S. 313, 97 S.Ct. 1192, 51 L.Ed.2d 360 (1977); *Califano v. Goldfarb*, 430 U.S. 199, 97 S.Ct. 1021, 51 L.Ed.2d 270 (1977); but see *Frontiero v. Richardson*, 411 U.S. 677, 93 S.Ct. 1764, 36 L.Ed.2d 583 (1973).

Defendants appear to argue that if the Court concludes that Section 607 creates a gender-based classification, said classification, because of its context as part of a social welfare program, should be subjected to less scrutiny than it would be if found in some other context:

> As with any standard of review, the *Craig* test is not capable of being applied in a hard and fast manner. Rather, its application must be adapted to the statutory scheme in which the alleged discrimination arises, e. g., a comprehensive social welfare program to aid dependent children.

Defendant Califano's Memorandum in Support of Motion for Summary Judgment 3.

The Supreme Court considered a similar argument in *Califano v. Goldfarb, supra.* In *Goldfarb*, the Court said that it is true that Congress has wide latitude to create classifications under social welfare programs. The Court further stated, however:

> But this 'does not, of course, immunize [social welfare legislation] from scrutiny under the Fifth Amendment.' . . . The Social Security Act is permeated with provisions that draw lines in classifying those who are to receive benefits.

8. As outlined previously, the plaintiffs allege that section 607 and the federal regulation violate the Fifth Amendment and that the state regulation violates the Fourteenth Amendment:

"'[W]hile the Fifth Amendment contains no equal protection clause, it does forbid discrimination that is "so unjustifiable as to be violative of due process."' *Schneider v. Rusk*, 377 U.S. 163, 168, [84 S.Ct. 1187, 12 L.Ed.2d 218] (1964); see also *Bolling v. Sharpe*, 347 U.S. 497, 499, [74 S.Ct. 693, 98 L.Ed. 884] (1954). This Court's approach to Fifth Amendment equal protection claims has always been precisely the same as to equal protection claims under the Fourteenth Amendment. See, e. g., *Schlesinger v. Ballard*, 419 U.S 498, [95 S.Ct. 572, 42 L.Ed.2d 610] (1975); *Jimenez v. Weinberger*, 417 U.S 628, 637, [94 S.Ct. 2496, 41 L.Ed.2d 363] (1974); *Frontiero v. Richardson*, 411 U.S. 677, [93 S.Ct. 1764, 36 L.Ed.2d 583] (1973). *Weinberger v. Wiesenfeld*, 420 U.S. 636, 638 n. 2, 95 S.Ct. 1225, 1228 n. 2, 43 L.Ed.2d 514 (1975).

It is apparent that the two regulations under discussion must survive or fail scrutiny based upon whether the statute under discussion survives or fails scrutiny. The Court, therefore, will restrict its analysis to scrutiny of section 607.

Congressional decisions in this regard are entitled to deference as those of the institution charged under our scheme of government with the primary responsibility for making such judgments in light of competing policies and interests. But '[t]o withstand constitutional challenge, . . . classifications by gender must serve important governmental objectives and must be substantially related to the achievement of those objectives.'

*Goldfarb, supra,* 430 U.S. at 210–11, 97 S.Ct. at 1028–29 (citations omitted). It is clear, therefore, that if the Court determines that Section 607's classification is gender-based, it must satisfy *Craig's* "middle test" to survive scrutiny under the Equal Protection Clause. Thus the Court must first determine whether the present classification is gender-based.

Defendants have asserted that the AFDC–U program's classification is not gender-based:

Although the application of 42 U.S.C § 607 is triggered by a gender-based classification, its impact falls in a sex-neutral manner on beneficiaries of the AFDC program: the application or non-application of benefits is without regard to whether the dependent children are male or female. *See generally,* 42 U.S.C. § 601: Moreover, benefits are provided or denied to the entire family, including parents and children, irrespective of their sex if the family qualifies for AFDC–U benefits. ·

Defendant Califano's Memorandum in Support of Motion for Summary Judgment 9 n.\*. In other words, defendants would have the Court examine the AFDC–U program from the standpoint of the ultimate beneficiaries rather than from the standpoint of the parent who qualifies said beneficiaries.

In *Goldfarb, supra,* the Supreme Court considered the constitutionality of the Social Security Act's survivors' benefits. Under said program benefits based on the earnings of a deceased husband covered by the Act were payable to his widow regardless of dependency, but such benefits on the basis of the earnings of a deceased wife were payable to her widower only if he had been receiving half his support from her. The Court found that the distinction under consideration deprived "women of protection for their families which men receive as a result of their employment." *Goldfarb, supra* at 206, 97 S.Ct. at 1026. The defendant in *Goldfarb,* however, argued that the Court's analysis of the equal protection question should focus:

not upon the discrimination against the covered wage earning female, but rather upon whether her surviving widower was unconstitutionally discriminated against by burdening him but not a surviving widow with proof of dependency. The gist of the argument is that, analyzed from the perspective of the widower, 'the denial of benefits reflected the congressional judgment that aged widowers as a class were sufficiently likely not to be dependent upon their wives, that it was appropriate to deny them benefits unless they were in fact dependent.'

*Goldfarb, supra* at 207, 97 S.Ct. at 1027. In rejecting defendant's argument, the Court stated:

From its inception, the social security system has been a program of social insurance. Covered employees and their employers pay taxes into a fund administered distinct from the general federal revenues to purchase protection against the economic consequences of old age, disability and death. But under § 402(f)(1)(D) female insureds received less protection for their spouses solely because of their sex. Mrs. Goldfarb worked and paid social security taxes for 25 years at the same rate as her male colleagues, but because of § 402(f)(1)(D) the insurance protection received by the males was broader than hers. Plainly then § 402(f)(1)(D) disadvantages women contributors to the social security system as compared to similarly situated men. The section then 'impermissibly discrimi-

nates against a female wage earner because it provides her family less protection than it provides that of a male wage earner, even though the family needs may be identical.' . . . In a sense of course both the female wage earner and her surviving spouse are disadvantaged by operation of the statute, but this is because 'Social Security is designed . . for the protection of the *family*,' . . and the section discriminates against one particular category of family—that in which the female spouse is a wage earner covered by social security. Therefore decision of the equal protection challenge in this case cannot focus solely on the distinction drawn between widowers and widows but, as *Wiesenfeld* held, upon the gender-based discrimination against covered female wage earners as well.

*Goldfarb, supra* at 208–09, 97 S.Ct. at 1027–28 (citations and footnotes omitted) (emphasis in original).

■ There is no requirement that a parent contribute to the Social Security program in order to qualify his family for AFDC–U benefits. There is, however, a requirement that the parent has formerly been employed. AFDC–U benefits flow indirectly from that former employment. As presently structured, the AFDC–U program permits a male parent, by his employment, to provide protection for his family that a female parent cannot provide. The section then "discriminates against a female wage earner because it provides her family less protection than it provides that of a male wage earner, even though the family needs may be identical."

Having concluded that the subject classification is gender-based, the Court must determine whether the classification was intended "to serve important governmental objectives" and, if so, whether it is "substantially related to the achievement of those objectives."

■ Title IV of the Social Security Act of 1935, 42 U.S.C. §§ 601–610, created the AFDC program. The program was originally enacted to assist certain needy children. It was not intended, however, to assist all needy children. See *King v. Smith*, 392 U.S. 309, 88 S.Ct. 2128, 20 L.Ed.2d 1118 (1968). It was enacted to provide aid to children of families in which there was no one capable of being a "breadwinner:"

Many of the children included in relief families present no other problem than that of providing work for the bread winner of the family. These children will be benefited from the work relief program and still more through the revival of private industry. But there are large numbers of children in relief families which will not be benefited through work program or the revival of industry.

These are the children and families which have been deprived of a father's support and in which there is no other adult than the one who is needed for the care of the children. These are principally families with female heads who are widowed, divorced, or deserted.

S.Rep.No.628, 79th Cong., 1st Sess., 17 (1935).

It is clear that Congress' decision to extend AFDC benefits only to children in one parent families was based, at least in part, on their confidence that the problem of needy children in families with two unemployed parents would be remedied by other programs. In 1961, however, Congress adopted 42 U.S.C. § 607, which created the AFDC–U program. The AFDC–U program was designed to provide funds to dependent children who were needy because of the unemployment of a parent. Section 607 was originally established as a temporary program. It was, however, extended a number of times and, in 1968, was made permanent.

As originally enacted, Section 607 defined a "needy dependent child" for purposes of the AFDC–U program as one who "has been deprived of parental care by reason of the unemployment of *a parent*." (Emphasis added). As is obvious, the statute in its original form did not contain a gender-based classification; it also did not require

that the unemployed parent have a connection with the workforce to qualify his family for AFDC–U benefits.

In 1968, Congress amended Section 607 to correct what it viewed as flaws in the program. One amendment removed the authority to define "unemployed" from the individual States and placed it in the Secretary of the Department of Health, Education and Welfare. This amendment was deemed necessary because the various definitions of "unemployment" adopted by the States "worked to the detriment of the program . . . .. In some instances, the definitions [were] very narrow so that only a few people [were] helped. In other States, the definitions [went] beyond anything that Congress originally envisioned." H.Rep.No.544, 90th Cong., 1st Sess., 108 (1967).

A second problem with the AFDC–U program as originally established was described as follows: "This program was originally conceived as one to provide aid for the children of unemployed fathers. However, some States make families in which the father is working but the mother is unemployed eligible. The bill would not allow such situations. Under the bill, the program could apply only to the children of unemployed fathers." H.Rep.No.544, 90th Cong., 1st Sess., 108 (1967). To remedy this problem, Section 607 was amended to define "needy dependent child," for purposes of the AFDC–U program, as one who "has been deprived of parental care by reason of the unemployment of *his father.*" (Emphasis added).

Congress sought by the foregoing to make the AFDC–U program conform with its original intent. The legislative history of the original enactment contained the following statement of purpose:

Your committee's bill, like the House bill, would permit States, for a temporary period, to assist children who are in need because of the unemployment of a parent, with the Federal Government participating to the same extent that it now participates in assistance to children who are in need because of the death, absence, or incapacity of a parent. At present needy families in which the need is occasioned by unemployment are not eligible for any type of assistance in which there is a Federal participation. Under this bill the same formula and the same conditions for Federal participation, with such additional conditions as are appropriate dealing with unemployment, would apply to States wishing to participate. All States, Puerto Rico, Virgin Islands, District of Columbia, and Guam have aid to dependent children programs under title IV of the Social Security Act. These programs afford a base capable of being expanded to include families in which the *breadwinner* is unemployed, if the States wish to expand them.

S.Rep.No.165, 87th Cong., 1st Sess., *reprinted in* [1961] U.S.Code Cong. & Admin.News, pp. 1716, 1716 (emphasis added). It is clear from the above quoted language that Congress did not intend the AFDC–U program to provide aid for working poor. Rather, it intended that the program provide aid to families in which the "breadwinner," or "wage earner" was unemployed. See *Coon v. Ohio Dept. of Public Welfare,* Civil No. C75–925 at 14 (N.D.Ohio March 1, 1976). The problem with the program, however, was that the language chosen in the original enactment only required one parent to be unemployed. Inasmuch as the AFDC–U program aided two parent families, said language permitted needy families in which the "breadwinner" was fully employed to receive benefits based upon the unemployment of the "nonbreadwinner." This problem was aggravated by the fact that before 1968, no prior connection to the workforce was requisite to receipt of benefits. The purpose of the amendment to Section 607, therefore, was to eliminate benefits to families in which the breadwinner was fully employed. As the previously quoted language from the Congressional history indicates, Congress characterized the problem it sought to eliminate in terms of employed fathers and unemployed mothers. It is clear, however, that the original statute also allowed for the opposite situation. A family in which the mother was working

and the father was unemployed would be eligible for benefits.

The 1968 amendment to Section 607 eliminated participation in the AFDC–U program by needy families in which the father was employed and the mother was unemployed. Congress did not, however, take any action to eliminate participation by needy families in which the mother was fully employed and the father was unemployed. The legislative history does not reveal that Congress even considered this type of untraditional family in which the female breadwinner was fully employed. It is possible, however, that Congress concluded that there were so few such families in which the female breadwinner was employed and the male nonbreadwinner was qualifying the family for benefits, that it was not necessary to eliminate them from participation. Plaintiffs, of course, do not complain of this "underinclusiveness" of the method by which Congress chose to eliminate what it saw as an abuse. Rather, they complain because the language Congress chose to eliminate participation by families in which the male "breadwinner" was employed, also eliminated benefits to untraditional families in which the female was the breadwinner and was unemployed. Again, the legislative history does not indicate that Congress was cognizant of the amendment's "overinclusiveness." It can be assumed, however, that Congress simply presumed that there were so few families which were dependent upon the earnings of the female parent, that it was unnecessary to provide aid to such families when the female parent became unemployed.

It appears, therefore, that Congress amended Section 607 based upon the "generally accepted presumption that a man is responsible for the support of his wife and children," *Wiesenfeld, supra* at 644, 95 S.Ct. at 1231, and the correspondent presumption that a woman is not so responsible. As the Supreme Court has noted, such a presumption is not without some support:

> Obviously, the notion that men are more likely than women to be the primary supporters of their spouses and children is not entirely without empirical support

. . . But such a gender-based generalization cannot suffice to justify the denigration of the efforts of women who do work and whose earnings contribute significantly to their families' support. *Wiesenfeld, supra* at 645, 95 S.Ct. at 1231–32. In *Wiesenfeld,* the Court declared that the Constitution prohibits classifications based upon such presumptions of dependency. Thus, unless another justification for the gender-based classification of Section 607 exists, it cannot withstand scrutiny under the Equal Protection Clause.

C

■ Defendants assert that there is an important governmental objective which is served by the provision of AFDC–U benefits to families of unemployed fathers which would not be served by the provision of such benefits to families of unemployed mothers. This purpose is the maintenance of the viability of the family as a unit by minimizing the economic incentive for the father to desert as a result of his unemployment. It is clear that such would be an important governmental objective. The Court concludes, however, that the instant gender-based distinction was not intended to further it.

It is true, as defendants assert, that one of Congress' objectives in establishing the AFDC–U program was to remove an incentive for an unemployed breadwinner to desert his family:

> Under the Aid to Dependent Children Program, needy children are eligible for assistance if their fathers are deceased, disabled or family deserters. Too many fathers, unable to support their families, have resorted to real or pretend desertion to qualify their children for help.

H.Rep.No.28, 87th Cong., 1st Sess., 2 (1961). They further assert that Congress adopted the 1968 amendment to Section 607 based upon a conclusion that this objective was not furthered by the inclusion of families in which the mother was the breadwinner. The legislative history of the 1968 amendments, however, does not support this assertion.

As defendants state, said legislative history contains the following:

The Committee is concerned about the effect of the absence of a State program for unemployed fathers has on family stability. Where there is no such program there is an incentive for an unemployed father to desert his family in order to make them eligible for assistance.

S.Rep.No.744, 90th Cong., 1st Sess. *reprinted in* [1967] U.S.Code Cong. & Admin.News, pp. 2834, 2996. This statement, however, does not appear to be a statement of Congressional purpose for the amendment of the definition of "dependent child." Rather, it appears simply to be a statement of Congress' belief that all of the individual states should participate in either AFDC–U or some similar program.[9] For purposes of discussion, however, the Court will accept defendants' assertion that this was a purpose of the gender-based classification under scrutiny, and consider whether said classification is "substantially related to the achievement of [said] objective."

It is clear upon the most cursory examination that the gender-based classification of Section 607 cannot withstand scrutiny based upon this asserted governmental purpose. Defendants argue that:

Congress sought to remedy the problem of the AFDC program encouraging parents from leaving the family in order to make the family eligible for AFDC benefits by enacting the AFDC–U program. The Congress chose to deal with the largest segment of the family desertion problem, namely the family in which the *father* has deserted to make the family eligible for AFDC benefits.

Defendant Creasy's Memorandum in Support of Motion for Summary Judgment at 4.

The first problem with defendants' asserted justification is that it is based upon the same type of "old notions" upon which presumptions of dependency are based. Presumptions of dependency are based upon the "old notion" that males are more often breadwinners than are females. The presently asserted justification is based upon the "old notion" that males are more likely to desert their families than are females. It is clear therefore that this asserted justification cannot withstand scrutiny.

The second problem with defendants' asserted justification is even more serious. They argue that provision of benefits to families of unemployed males eliminates the motivation for an unemployed father to desert his family but that provision of such benefits to families of unemployed females would not accomplish the same objective. Such is simply not true. The plaintiffs in the present case are members of families which cannot qualify for AFDC–U benefits because the unemployed parent is female. If, however, the male parent in plaintiffs' families were to desert their families, regardless of the fact that the female parent is the breadwinner, the families would be eligible for AFDC benefits. It is obvious, therefore, that the provision of benefits to families in which the female parent is the "breadwinner" would accomplish the same important governmental objective which is accomplished for traditional families by the program in its present form.

---

**9.** That this was the significance of the above quoted statement becomes apparent upon examination of its context:

The program of benefits for the dependent children of unemployed parents was established on a 1-year basis in 1961, extended for 5 years by the 1962 amendments to the Social Security Act and extended to June 30, 1968, by Public Law 90—36. The program is optional with the States and currently 22 States, including nearly 60 percent of the population of the United States, have programs under the Federal Legislation. Moreover, substantial numbers of similar families

not living in those 22 States are receiving assistance under title V of the Economic Opportunity Act.

The committee is concerned about the effect that the absence of a State program for unemployed fathers has on family stability. Where there is no such program there is an incentive for an unemployed father to desert his family in order to make them eligible for assistance. This will be a matter of continuing study by the committee.

S.Rep.No.744, 9th Cong., 1st Sess. *reprinted in* [1967] U.S.Code Cong. & Admin.News, pp. 2834, 2996.

Based upon the foregoing, the Court concludes that 42 U.S.C. § 607, 45 C.F.R. § 233.100, and OPAM § 314.3 operate in such a way as to deny plaintiffs, and the class they represent, equal protection of the law as guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution.

## IV. REMEDY

### A

The court having concluded that the statute and regulations at issue are unconstitutional, plaintiffs are entitled to a declaratory judgment. Therefore, 42 U.S.C. § 607, 45 C.F.R. § 233.100, and OPAM § 314.3 shall be declared unconstitutional.

### B

██ In view thereof, plaintiffs are entitled to an injunction preventing the continued operation of the AFDC–U program in an unconstitutional manner. While plaintiffs and defendant Califano have urged that if the AFDC–U program were found unconstitutional, defendants should be enjoined to provide benefits to plaintiffs and the class they represent, defendant Creasy has urged that the Court should enjoin any further payments pursuant to the program.

> Where a statute is defective because of underinclusion there exists two remedial alternatives: a court may either declare it a nullity and order that its benefits not extend to the class that the legislature intended to benefit, or it may extend the coverage of the statute to include those who are aggrieved by exclusion.

*Welsh v. United States,* 398 U.S. 333, 361, 90 S.Ct. 1792, 1808, 26 L.Ed.2d 308 (Harlan, J., concurring). *Moritz v. Commissioner of Internal Revenue,* 469 F.2d 466 (10th Cir.

1972), *cert. denied* 412 U.S. 906, 93 S.Ct. 2291, 36 L.Ed.2d 971 (1973).

As with the statute in *Welsh,* the Social Security Act contains a broad separability clause. 42 U.S.C. § 1303.[10] Justice Harlan noted that such a separability clause lends indirect support to extension of an underinclusive statute:

> While the necessary remedial operation, extension, is more analogous to a graft than amputation, I think the boundaries of permissible choice may properly be considered fixed by the legislative pronouncement on severability.

*Welsh, supra* at 364, 90 S.Ct. at 1809 (Harlan, J. concurring).

The proper course in the present case is extension rather than abrogation:

> If an important congressional policy is to be perpetuated by recasting unconstitutional legislation, . . . the analytically sound approach is to accept responsibility for this decision. Its justification cannot be by resort to legislative intent, as that term is usually employed, but by a different kind of legislative intent, namely the presumed grant of power to the courts to decide whether it more nearly accords with Congress' wishes to eliminate its policy altogether or extend it in order to render what Congress plainly did intend, constitutional.

*Welsh, supra* at 355–56, 90 S.Ct. at 1804 (Harlan, J., concurring). The purpose of the AFDC–U program is to provide benefits for needy children who are needy because of the unemployment of their "breadwinner." Rather than halt payments to families with male breadwinners, it would more nearly accord with Congress' wishes to extend benefits to families with female breadwinners.[11] Accordingly, defendants shall be

---

**10.** The provisions of 42 U.S.C. § 1303 are as follows:

> If any provision of this Act, or the application thereof to any person or circumstance, is held invalid, the remainder of the Act, and the application of such provision to other persons or circumstances shall not be affected thereby.

**11.** The Court feels that it is necessary to note that the result reached in this Order will not

only require the inclusion of needy families with unemployed mothers who have the requisite attachment with the workforce and whose husbands are unemployed, but will also require the inclusion of needy families with unemployed mothers who have the requisite attachment with the workforce and whose husbands are fully employed. The Court realizes that this result makes a program which Congress intended as aid to needy families in which both parents were unemployed available to needy

enjoined, from this date forward, to provide AFDC–U benefits to needy families of unemployed mothers to the same extent as such benefits are presently provided to needy families of unemployed fathers.

In addition to prospective relief, plaintiffs seek an order requiring defendant Califano to pay plaintiffs an amount equal to one hundred per cent of the benefits which would have been paid them in the past but for the invalid gender-based distinction found in Section 607.[12] The Court, however, finds that such relief would be inappropriate.

■ Section 607 and the federal regulation which this Court has found to be unconstitutional provide funds to the states for AFDC–U benefits. They do not provide for payments directly to needy families. The Court does not believe that it would be within its discretion, in an attempt to cure a denial of equal protection, to order such direct payments.

Further, the Court finds that the facts of the present case are not such that retroactive relief is appropriate. In *Chevron Oil Co. v. Huson*, 404 U.S. 97, 92 S.Ct. 349, 30 L.Ed.2d 296 (1971), the Supreme Court indicated three factors which merit consideration in determining whether a judicial decision should be afforded retroactive effect:

First, the decision to be applied nonretroactively must establish a new principle of law, either by overruling clear past precedent on which litigants may have relied, . . . or by deciding an issue of first impression whose resolution was not clearly foreshadowed, . . . Second it has been stressed that "we must . . weigh the merits and demerits in each case by looking to the prior history of the rule in question, its purpose and effect,

and whether retrospective operation will further or retard its operation." . . . Finally, we have weighed the inequity imposed by retroactive application, for "[w]here a decision of this Court could produce substantial inequitable results if applied retroactively, there is ample basis in our cases for avoiding the 'injustice or hardship' by a holding of nonretroactivity." . . .

*Chevron Oil Co., supra* at 106–07, 92 S.Ct. 349 (citations omitted).

Applying these considerations to the facts of the present case leads to the following conclusions. First, although the gender-based distinction of Section 607 has been in effect since 1968, it has never before been held unconstitutional. The present case, therefore, is one of first impression and the Court finds that its resolution was not clearly foreshadowed. Second, the purpose of the AFDC–U program is to provide a monthly income to needy families. That purpose would not be furthered by ordering a lump sum payment of withheld funds especially since some of those payments would be made to families who would no longer be needy. Finally, the Court has determined that retroactive application, while placing an additional burden on an already financially troubled program, would not cure the inequity suffered by plaintiffs. Plaintiffs' past suffering, "however deplorable, cannot be undone." *Rothstein v. Wyman*, 467 F.2d 226, 234 (2d Cir., 1972), *cert. denied* 411 U.S. 921, 93 S.Ct. 1552, 36 L.Ed.2d 315.

## C

Finally, plaintiffs have requested an award of reasonable attorneys' fees and the

---

families in which the father is fully employed. The Court further notes two things, however: First, as pointed out earlier in this Order, AFDC–U benefits are already available to needy families with unemployed fathers in which the mother is fully employed; and second, this is a problem which can easily be cured by amending the program to require applicants to prove that both parents are unemployed and at least one parent has the requisite

connection with the workforce. Of course, such action is within the province of Congress and not this Court.

12. Retroactive benefits are not requested from the state defendant presumably because of the bar of the Eleventh Amendment to the United States Constitution.

costs of bringing this action. The Court, however, finds it impossible to determine the appropriateness of such an award on the present record. See *Huecker v. Milburn*, 538 F.2d 1241 (6th Cir. 1976). The parties shall, therefore, be ordered to submit briefs and whatever documentary evidence they deem appropriate for the resolution of this issue.

## V. CONCLUSION

Accordingly, the Court hereby declares Section 407 of the Social Security Act of 1935, 42 U.S.C. § 607 unconstitutional as violative of the Due Process Clause of the Fifth Amendment to the United States Constitution; declares 45 C.F.R. § 233.100 unconstitutional as violative of the Due Process Clause of the Fifth Amendment to the United States Constitution; and declares OPAM § 314.3 unconstitutional as violative of the Equal Protection Clause of the Fourteenth Amendment. Defendants Califano and Creasy are hereby enjoined from this day forward to provide Aid to Families with Dependent Children—Unemployed Fathers benefits to plaintiffs, and the class they represent, to the same extent that said benefits are extended to other needy families similarly situated in all respects but for the sex of the unemployed parent with the requisite connection with the workforce. Finally, plaintiffs are hereby ordered to submit briefs and supporting documentary evidence on the issue of attorneys' fees within ten (10) days of the date of this Order. Defendants shall submit reply briefs and supporting documents within ten (10) days thereafter.

IT IS SO ORDERED.

## APPENDIX A

Section 233.100(c) provides:

*Federal financial participation.* (1) Federal financial participation is available in payments authorized in accordance with the State plan approved under section 402 of the Act as aid to families with dependent children with respect to a child.

(i) Who meets the requirements of section 406(a)(2) of the Act;

(ii) Who is living with any of the relatives specified in section 406(a)(1) of the Act in a place of residence maintained by one or more of such relatives as his (or their) own home;

(iii) Who has been deprived of parental support or care by reason of the fact that his father is employed less than 100 hours a month; or, exceeds that standard for a particular month if his work is intermittent and the excess is of a temporary nature as evidenced by the fact that he was under the 100-hour standard for 2 prior months and is expected to be under the standard during the next month.

(iv) Whose father (a) has six or more quarters of work (as defined in paragraph (a)(3)(iv) of this section) within any 13-calendar-quarter period ending within 1 year prior to the application for such aid, (b) within such 1-year period, received unemployment compensation under an unemployment compensation law of a State or of the United States, or was qualified (under the terms of paragraph(a)(3)(v) of this section) for such compensation under the State's unemployment compensation law, or (c) is an individual whose application for aid was made within the period referred to in paragraph (a)(7) or (8) of this section and who by virtue of the requirements in such paragraph (a)(7) or (8) would be considered to have met the conditions in subdivision (iv)(a) or (b) of this subparagraph; and

(v) Whose father (a) is currently registered with the public employment offices in the State, and (b) with respect to any week, does not receive unemployment compensation under an unemployment compensation law of a State or of the United States.

(2) The State may not include in its claim for Federal financial participation payments made as aid under the plan with respect to a child who meets the conditions set forth in subparagraph (1) of this paragraph, where such payments were made.

(i) For any part of the 30 day period prior to the receipt of such payment, if during such period his father was not unemployed (as defined by the State pursuant to paragraph (a)(1) of this section);

(ii) For such 30-day period, if during such periods his father refused without good cause a bona fide offer of employment or training for employment; and

(iii) For any period beginning with the 31st day after the receipt of such aid, if and for as long as no action is taken during such period to certify his father for participation in the Work Incentive Program as provided in section 402(a)(19) of the Act and the regulations relating thereto.

## APPENDIX B

Chapter 5107.03 provides in part:

Subject to Chapter 5107. of the Revised Code, and to the availability of revenues for the purposes thereof, a needy child residing in the state shall be entitled to aid if the following conditions are fulfilled:

(A) Such child has been deprived of parental support or care by reason of death, continued absence from the home, or physical or mental incapacity of a parent, or the unemployment of a parent, and is living with his father, mother, grandfather, grandmother, brother, sister, stepfather, stepmother, stepbrother, stepsister, uncle, aunt, first cousin, nephew, or niece in a place of residence maintained by one or more of such relatives as their own home, or is living in a foster family home or child care institution approved by the department of public welfare. As used in this section "unemployment of a parent" means that the parent is either totally or partially unemployed. No aid shall be provided to children who are in need for reason of the unemployment of a parent:

(1) Unless the unemployed parent is physically and mentally capable of engaging in remunerative employment;

(2) Unless the unemployed parent of the needy child registers for employment;

(3) Unless such aid is provided under a plan approved by the department of health, education, and welfare pursuant to the "Social Security Act," 49 Stat. 620 (1935), 42 U.S.C. 301 as amended;

## APPENDIX C

Section 607(b) provides:

The provisions of subsection (a) of this section shall be applicable to a State if the State's plan approved under section 602 of this title—

(1) requires the payment of aid to families with dependent children with respect to a defendant child as defined in subsection (a) of this section when—

(A) such child's father has not been employed (as determined in accordance with standards prescribed by the Secretary) for at least 30 days prior to the receipt of such aid,

(B) such father has not without good cause, within such period (of not less than 30 days) as may be prescribed by the Secretary, refused a bona fide offer of employment or training for employment, and

(C)(i) such father has 6 or more quarters of work (as defined in subsection (d)(1) of this section) in any 13-calendar-quarter period ending within one year prior to the application for such aid or (ii) he received unemployment compensation under an unemployment compensation law of a State or of the United States, or he was qualified (within the meaning of subsection (d)(3) of this section) for unemployment compensation under the unemployment compensation law of the State, within one year prior to the application for such aid; . . .

## APPENDIX D

Ohio Public Assistance Manual Section 370.1 provides:

*Automatic eligibility As a Result of Linkage to Federally Reimbursable Need Program*

(1) Eligibility for medical services is contingent upon eligibility for financial assistance under ADC, and the determination of eligibility for the latter automatically results in eligibility for Title XIX medical services for:

persons included in the assistance group for the ADC program for the month for which a payment, including a vendor payment, is made;

persons included in the ADC assistance group when the cash grant is withheld only because there is reason to question whether this amount of aid is correct or when the cash grant is reduced to zero to adjust for an overpayment.

(2) Families whose ADC cash grant is terminated because of employment will continue to be eligible for Medicaid for four (4) months:

if the family received and was eligible to receive ADC payments in at least 3 out of the last 6 months before they became *ineligible and*

if the family meets all other ADC eligibility requirements except those regarding employment (such as financial need or the ADC–U 100 hour maximum); *and*

only so long as a member of the ADC family is employed throughout the four month period. Continued medicaid coverage begins with the month after the one in which the family is no longer eligible for ADC cash benefits.