**Harry NOVAK, Plaintiff,**

v.

**Patricia HARRIS, Secretary of Health, Education and Welfare, Defendant.**

**No. 79 C 924.**

United States District Court, E. D. New York.

July 28, 1980.

Brooklyn Legal Services, Jane Stevens, Brooklyn, N.Y., for plaintiff.

Elaine C. Buck, Asst. U. S. Atty., Brooklyn, N. Y., for defendant.

## MEMORANDUM OF DECISION AND ORDER

COSTANTINO, District Judge.

This is an action challenging the final determination of the Secretary of Health, Education and Welfare. The jurisdiction of this court is asserted pursuant to § 205(g) of the Social Security Act (the "Act"), 42 U.S.C. § 405(g). Plaintiff, Harry Novak, seeks a reversal of the Secretary's decision to deny retroactive payment of Social Security widower's insurance benefits under the Act, as amended 42 U.S.C. § 402(f)(1).

The two principal issues raised in this action are (1) whether the ruling of *Califano v. Goldfarb*, 430 U.S. 199, 97 S.Ct. 1021, 51 L.Ed.2d 270 (1977) should be applied retroactively to permit the payment of widower's insurance benefits to plaintiff for the period prior to March, 1977 and (2) whether the award of retroactive benefits violates the sovereign immunity of the United States. After a careful consideration of the issues raised and the arguments of counsel, the court finds that plaintiff is entitled to judgment as a matter of law. The basis for this conclusion will be discussed *seriatim*.

*Statement of Facts*

On August 18, 1975 following the death of his wife, plaintiff, Harry Novak, applied for widower's insurance benefits. The Secretary denied plaintiff's initial application for failure to satisfy the dependency requirements of § 202(f)(1)(D), 42 U.S.C. § 402(f)(1)(D). Specifically, a widower seeking benefits under the Act must establish that at the time of his wife's death he was receiving at least one-half of his support from her. Harry Novak did not meet this requirement.

On March 2, 1977 the Supreme Court in *Califano v. Goldfarb*, 430 U.S. 199, 97 S.Ct. 1021, 51 L.Ed.2d 270 (1977), declared the dependency requirements of widower's insurance benefits as violative of the equal protection component of the Fifth Amendment. Plaintiff subsequently requested immediate, retroactive payment based upon the *Goldfarb* decision. Thereafter, Harry

Novak was informed by the Secretary that as a result of *Goldfarb*, he would begin receiving widower's benefits as of March, 1977, but not prior thereto. Plaintiff requested a hearing on his claim for widower's benefits retroactive to the date of his original application. The claim was denied and the decision of the Administrative Law Judge which gave *Goldfarb* prospective effect only, was adopted by the Social Security Administration's Appeals Council as the final decision of the Secretary. Upon appeal of the Secretary's final decision, both the plaintiff and the Secretary filed motions for summary judgment.

*Conclusions of Law*

Retroactivity of Goldfarb

■ The Constitution neither prohibits nor requires that changes in the law be applied retroactively. *Linkletter v. Walker*, 381 U.S. 618, 85 S.Ct. 1731, 14 L.Ed.2d 601 (1965). The appropriateness of applying a judicial decision retroactively entails a balancing of various factors, including the degree of hardship placed upon the litigants. Ordinarily, however, the function of a court, which is to decide disputes after they have arisen, requires that judicial decisions operate with retroactive effect.[1] Mishkin, *The High Court, The Great Writ, and The Due Process of Time and Law*, 79 Harv.L. Rev. 56, 60 (1965).

■ A reading of *Goldfarb* indicates that the Supreme Court did not explicitly mandate its retroactive application. Silence on this issue would not create a presumption of nonretroactivity. In determining when awards should or should not be granted retroactive application, the guidelines set forth in *Chevron Oil Co. v. Huson*, 404 U.S.

97, 92 S.Ct. 349, 30 L.Ed.2d 296 (1971) are controlling.[2] Most significantly, the Court in *Chevron Oil* elucidated the following test:

> In our cases dealing with the nonretroactivity question, we have generally considered three separate factors. First, the decision to be applied nonretroactively must establish a new principle of law, either by overruling clear past precedent on which litigants may have relied, *see e. g., Hanover Shoe, Inc. v. United Shoe Machinery Corp., supra*, 392 U.S. [481], at 496, 88 S.Ct. [2224], at 2233 [20 L.Ed.2d 1231], or by deciding an issue of first impression whose resolution was not clearly foreshadowed, *see e. g., Allen v. State Board of Elections, supra*, 393 U.S. [544], at 572, 89 S.Ct. [817], at 835 [22 L.Ed.2d 1]. Second, it has been stressed that "we must ... weigh the merits and demerits in each case by looking to the prior history of the rule in question, its purpose and effect, and whether retrospective operation will further or retard its operation." *Linkletter v. Walker, supra*, 381 U.S. [618], at 629, 85 S.Ct. [1731], at 1738 [14 L.Ed.2d 601]. Finally, we have weighed the inequity imposed by retroactive application, for "[w]here a decision of this Court could produce substantial inequitable results if applied retroactively, there is ample basis in our cases for avoiding the 'injustice or hardship' by a holding of nonretroactivity." *Cipriano v. City of Houma, supra*, 395 U.S. [701], at 706, 89 S.Ct. [1897], at 1900 [23 L.Ed.2d 647].

404 U.S. at 106–107, 92 S.Ct. at 355.

■ In applying the first element of the *Chevron* test, this court must decide wheth-

---

**1.** Justice Harlan in *Mackey v. United States*, 401 U.S. 667, 91 S.Ct. 1160, 28 L.Ed.2d 404 (1971), also speaks of uneven justice when one case is fished from the stream of review and used as a vehicle for pronouncing new constitutional standards, while a stream of similar cases is permitted to flow by unaffected by that new rule. Moreover, retroactive benefits have been awarded in a series of district court cases dealing with various provisions of the Social Security Act. *See, e. g., Cash v. Califano*, 469 F.Supp. 129 (W.D.Va.1979), *affirmed* 621 F.2d

626 (4th Cir., May 19, 1980); *Hurvich v. Califano*, 457 F.Supp. 760 (N.D.Cal.1978); *Crumpler v. Califano*, 443 F.Supp. 342 (E.D.Va.1978). *See also Wright v. Califano*, 603 F.2d 666 (7th Cir. 1979), *cert. denied*, 447 U.S. 911, 100 S.Ct. 2999, 64 L.Ed.2d 862 (1980).

**2.** Significantly, *Chevron's* language indicates that retroactive application must be the general rule unless certain threshold requirements are met which support a determination of nonretroactivity.

er the *Goldfarb* decision overruled clear past precedent or, in the alternative, decided an issue of first impression. The leading cases of *Frontiero v. Richardson*, 411 U.S. 677, 93 S.Ct. 1764, 36 L.Ed.2d 583 (1973) and *Weinberger v. Wiesenfeld*, 420 U.S. 636, 95 S.Ct. 1225, 43 L.Ed.2d 514 (1975) indicate that the unconstitutionality of statutory presumptions of dependency based solely on gender was established many months prior to *Goldfarb*. Indeed, the Supreme Court explicitly stated that *Goldfarb* presents precisely the situation faced in *Frontiero* and *Wiesenfeld*. 430 U.S. at 217, 97 S.Ct. at 1032. The Court found that:

> The gender-based distinction drawn by § 402(f)(1)(D)—burdening a widower but not a widow with the task of proving dependency upon the deceased spouse—presents an equal protection question indistinguishable from that decided in *Weinberger v. Wiesenfeld, supra*. That decision and the decision in *Frontiero v. Richardson*, 411 U.S. 677 [93 S.Ct. 1764, 36 L.Ed.2d 583] (1973), plainly require affirmance of the judgment of the District Court. *Id.* [430 U.S.] at 204 [97 S.Ct. at 1025].

Case law prior to *Goldfarb* indicates that the general notion that men are more likely than women to be the primary supporters of their spouses can not justify a gender-based distinction which devalues the service of women as compared with men.[3] *Weinberger v. Wiesenfeld, supra; Frontiero v. Richardson, supra.* Precedent thus "inescapably compelled the conclusion" that gender-based differentiation, which results in the denigration of the efforts of female workers by providing the female wage earner with less protection for her spouse than is produced by the efforts of male wage earners, is forbidden by the Constitution. 430 U.S. at 206–207, 97 S.Ct. at 1026–1027.

■ The court is not unmindful of the fact that differing treatment of men and women is valid if such treatment serves important governmental objectives and the means employed are substantially related to the achievement of those objectives. *Orr v. Orr*, 440 U.S. 268, 99 S.Ct. 1102, 59 L.Ed.2d 306 (1979); *Califano v. Webster*, 430 U.S. 313, 97 S.Ct. 1192, 51 L.Ed.2d 360 (1977); *Craig v. Boren*, 429 U.S. 190, 97 S.Ct. 451, 50 L.Ed.2d 397 (1976). Thus, the gender-based distinctions in the statutes involved in *Kahn v. Shevin*, 416 U.S. 351, 94 S.Ct. 1734, 40 L.Ed.2d 189 (1974) and *Schlesinger v. Ballard*, 419 U.S. 498, 95 S.Ct. 572, 42 L.Ed.2d 610 (1975) were justified because the purpose of each was the permissible one of redressing the longstanding disparate treatment of women.[4] 430 U.S. at 209, fn.8, 97 S.Ct. at 1028, fn. 8. *See also Wengler v. Druggists Mutual Insurance Co.*, 446 U.S. 142, fn. 4, 100 S.Ct. 1540 fn. 4, 64 L.Ed.2d 107 (1980). In contradistinction, the statutes involved in *Frontiero, Wiesenfeld* and *Goldfarb* were not designed to rectify the effects of past discrimination upon women; indeed, those statutes resulted in additional economic disadvantage to women. 430 U.S. at 210–217, 97 S.Ct. at 1028–1032; *Kahn v. Shevin*, 416 U.S. 351, 355 fn. 8, 94 S.Ct. 1734, 1737 fn. 8, 40 L.Ed.2d 189 (1973). Thus, notwithstanding the instances of valid gender-based discriminations, the decision reached in *Goldfarb* inevitably followed from the precedent established by *Frontiero* and *Wiesenfeld*.[5]

3. Most recently, the Supreme Court in *Wengler v. Druggists Mutual Insurance Co.*, 446 U.S. 142, 100 S.Ct. 1540, 64 L.Ed.2d 107 (1980), speaks of *Goldfarb* as an inevitable extension of *Frontiero* and *Wiesenfeld*.

4. By way of example, the statute in *Kahn v. Shevin*, 416 U.S. 351, 94 S.Ct. 1734, 40 L.Ed.2d 189 (1974), granted widows an annual property tax exemption, but it offered no analogous benefit for widowers. The Supreme Court upheld the state tax law because it was "reasonably designed to further the state policy of cushion-

ing the financial impact of spousal loss upon the sex for which that loss imposes a disproportionately heavy burden." 416 U.S. at 355, 94 S.Ct. at 1737. Thus, the differing treatment was deemed to rest upon a fair and substantial relation to the object of the legislation. *Id.*

5. This court's conclusion is further supported by the development of a network of statutes designed to monitor sex-based discrimination. *See generally* 1971 U.S.Code Cong. and Admin. News, Vol. 2, p. 2131 (amending Title 5 of the United States Code to provide for equality of

Under the second factor of the *Chevron* test, the court must examine whether retroactive application of the new rule will further or retard its operation. The court finds that retroactivity would promote the legislative intent behind enactment of § 402(f) and the purpose of *Goldfarb*. Specifically, it would further the goal that funds paid into Social Security by a female wage earner should be available to her surviving spouse on the same terms as money earned and paid by a male wage earner.

The Secretary contends, however, that the statutory purposes of the Social Security program generally and the widower's benefits provision specifically would be frustrated by the granting of compensatory lump sum retroactive relief. It is argued that Congress, in 1939, by amending the Act, rejected a method of lump sum payments and substituted monthly dependents' which more adequately would replace the continuing income formerly provided by the deceased worker's earnings. Thus, lump sum retroactive payment would frustrate the intent of Congress. The purpose of § 402(f), as revealed by its legislative history, belies this proposition.

As the Court explained in *Goldfarb*, the social security system is a program of social insurance designed to protect the family against the economic consequences of old age, disability and death. 430 U.S. at 208–209, 97 S.Ct. at 1027–1028. Further, the legislative history of § 402(f)(1)(D) indicates that the general purpose of the 1939 amendments—which provided for wives and widows' benefits but not widowers' benefits—was to afford more adequate protection to the family as a unit. H.R.Rep.No. 728, 76th Cong., 1st Sess. 7 (1939). In the main, lump sum payments to the estate of the deceased wage earner was criticized because it provided for benefits regardless of whether dependents were involved. ·Thus, the intent of Congress, in adopting survivors' benefits, was to furnish more significant protection directly to the dependent survivors of the deceased worker. 430 U.S. at 214–215, 97 S.Ct. at 1030–1031.

In 1950, survivors' benefits were extended to husbands and widowers so as to equalize the protection given to the dependents of women and men. Advisory Council on Social Security, S.Doc.No.208, 80th Cong., 2d Sess. 38 (1949). It was acknowledged by Congress that insured women, under the former program, lacked some of the rights which insured men acquired. *Id.* *See also* S.Rep.No.1669, 81st Cong., 2d Sess., 28 (1950); 430 U.S. at 216, 97 S.Ct. at 1031. Thus, retroactive payment would further the statutory purpose of § 402(f) by ensuring that Mrs. Novak will receive equal value for her labor as would Mr. Novak, had he predeceased her.

Case law also supports the belief that the awarding of a retroactive lump sum, under these circumstances, is compatible with the policy behind the Social Security system.[6]

---

treatment for married women Federal employees with respect to veteran's preference); 42 U.S.C. § 2000e *et seq.* and the Sex Discrimination Guidelines issued pursuant to Title VII, 29 C.F.R. §§ 1604.1–1604.10; 29 U.S.C. § 206(d); Toward Elimination of Sex-Based Differentials in the Social Security System, Statement of the U. S. Commission on Civil Rights, at 9–11 (December, 1974) (the Commission identified dependency tests as a blatant area of sex discrimination); U. S. Department of Health, Education and Welfare, Higher Education Guidelines, at 13 (October, 1972); Title IX of the Education Amendments of 1972, 40 Fed.Reg. 24143–24144, 45 C.F.R. § 86.56 (June 4, 1975) (prohibits the recipients of federal funds from withholding from the spouse of a female wage earner any benefits provided to the spouse of a male wage earner).

**6.** The Secretary contends that *Rothstein v. Wyman*, 467 F.2d 226 (2d Cir. 1972), *cert. denied*, 411 U.S. 921, 93 S.Ct. 1552, 36 L.Ed.2d 315 (1973), and *Stevens v. Califano*, 448 F.Supp. 1313 (N.D.Ohio 1978) reinforce the proposition that even if Harry Novak lost a source of regular support, the awarding of a compensatory lump sum would serve no statutory purpose. The circumstances underlying the cases cited by the Secretary are inapposite to the facts before this court. The *Rothstein* court emphasized that the major factor in its refusal to order retroactive payment of public assistance benefits was the existence of a scheme of cooperative federalism which underlay the matching grant program. The court reasoned that "the federal interest in retroactively correcting the misuse of federal funds ... cannot by itself justify the significant increase in federal-state tensions which would result from a court order

*See generally Jimenez v. Weinberger,* 523 F.2d 689 (7th Cir. 1975), *cert. denied,* 427 U.S. 912, 96 S.Ct. 3200, 49 L.Ed.2d 1204 (1976); *Cash v. Califano,* 469 F.Supp. 129 (W.D.Va.1979), *affirmed,* 621 F.Supp. 626 (4th Cir., 1980); *Hurvich v. Califano,* 457 F.Supp. 760 (N.D.Cal.1978); *Crumpler v. Califano,* 443 F.Supp. 342 (E.D.Va.1978). Further, the Supreme Court implicity affirmed an award of retroactive benefits in a series of related cases. *Califano v. Abbott,* 430 U.S. 924, 97 S.Ct. 1539, 57 L.Ed.2d 768 (1977); *Califano v. Jablon,* 430 U.S. 924, 97 S.Ct. 1539, 57 L.Ed.2d 768 (1977); *Califano v. Silbowitz,* 430 U.S. 924, 97 S.Ct. 1539, 51 L.Ed.2d 768 (1977). Here, an award of retroactive benefits would support, rather than defeat, the statutory purpose of § 402(f)(1)(D) in that such an award would represent the full return on Mrs. Novak's contribution to the Social Security Trust Fund. Second, retroactive payment would further the general purpose behind the Social Security insurance system, namely, to protect more fully the family as a unit. By way of example, Mr. Novak might direct a

requiring the state to expend its funds against its will .... The award ... of retroactive payments in the circumstances of this record" would be an improvident exercise of the court's power when measured by the principle of federalism. 467 F.2d at 235–236. No such federalism considerations would enter into our decision in this case. Second, the *Rothstein* court noted that the purpose of welfare payments was to swiftly provide funds to impoverished people and that as time goes by "retroactive payments become compensatory rather than remedial." *Id.* at 235.

The Social Security insurance program, however, is not tied to individualized need. The only eligibility requirements involve the requirements mandated by the statute. Here, by contributing to the trust fund, plaintiff's wife established the eligibility of her husband to receive benefits regardless of his need. *See* 430 U.S. at 213, 97 S.Ct. at 1030. Thus, a retroactive award merely represents the return on Mrs. Novak's contribution to the Social Security Trust Fund for the ultimate purpose of protecting her surviving spouse.

The *Stevens* court held that monthly income to needy families is not furthered by ordering lump sum retroactive payments, especially since some of those payments "would be made to families who would no longer be needy." 448 F.Supp. at 1324. The Supreme Court in *Goldfarb* dealt with employment related benefits and the decision made it clear that

back award of benefits to the payment of a mortgage or to the other financial burdens shared by him and his wife during their joint lifetimes. An analysis of all these factors perforce must tip the scales toward a finding of retroactivity.

The final factor to be evaluated under *Chevron* is whether retroactive application of *Goldfarb* will produce "substantial" inequitable results. Two significant points militate against nonretroactive application of *Goldfarb.* Specifically, this court is not dealing with a class of widowers; the court is concerned solely with a single claimant whose claim was pending at the time of the decision in *Goldfarb.* Although consideration should be given to the potential impact of granting retroactive effect in the present case, this court is cognizant of the concrete individual rights of the plaintiff, Harry Novak. Second, in measuring the hardships suffered by each party, the court initially must be satisfied that retroactive payment would produce substantial inequitable results.[7] *Jimenez v. Weinberger,* 523 F.2d 689

§ 402(f)(1)(D) is phrased in terms of dependency, not need. 430 U.S. at 213–214, 97 S.Ct. at 1030–1031. Thus, the statutory purpose of § 402(f) is to protect the family and the *Goldfarb* decision assures that the efforts of the female worker will produce the same protection for her spouse as is produced by the efforts of men. The award of retroactive benefits would further such goals.

7. The Secretary contends that *Los Angeles Department of Water and Power v. Manhart,* 435 U.S. 702, 98 S.Ct. 1370, 55 L.Ed.2d 657 (1978) mandates a finding that a retroactive award in the case at bar would constitute a "windfall to people who can not be viewed as having been insured for the particular risk upon which their claim for relief is based" and further, would unjustly jeopardize the insurer's solvency. First, as previously discussed, a retroactive award in this case can not be characterized as a windfall since such an award merely represents the return on Mrs. Novak's contribution to the Social Security Trust Fund. Second, the *Manhart* decision is inapposite here for several reasons. The prohibition against sex-differentiated employee contributions, unlike the unconstitutionality of gender-based dependency requirements, represents a marked departure from past practice. 435 U.S. at 722, 98 S.Ct. at 1382. Finally, the Supreme Court in *Manhart* emphasized the delicate financial nature of

(7th Cir. 1975), *cert. denied*, 427 U.S. 912, 96 S.Ct. 3200, 49 L.Ed.2d 1204 (1976). This court can not conclude that an award of retroactive benefits to one person, for a period of some two and one-half years, would have any significant impact upon the fiscal integrity of the Social Security system. Indeed, it would be inequitable for Mr. Novak to be denied his right to widowers' benefits for a limited period of time because, during that period, there existed an unconstitutional gender-based requirement.

In measuring the extent of the government's burden against the private harm, the court finds that the potential harm to the plaintiff outweighs the potential burden on the Social Security Administration. Accordingly, the court finds that the standards for nonretroactivity, as articulated in *Chevron*, have not been met in this case.

Sovereign Immunity

█ The Secretary next contends that an award of retroactive payment violates the sovereign immunity of the United States. It is established that the United States, as sovereign, is immune from suit unless it consents to be sued.[8] *United States v. Testan*, 424 U.S. 392, 96 S.Ct. 948, 47 L.Ed.2d 114 (1975). The court is satisfied, however, that § 405(g) of the Act, which grants the district court the power to modify or reverse the decision of the Secretary, operates as a waiver of sovereign immunity. *Wright v. Califano*, 603 F.2d 666 (7th Cir. 1979), *cert. denied*, 447 U.S. 911, 100 S.Ct. 2999, 64 L.Ed.2d 862 (June 9, 1980); *Jimenez v. Weinberger*, 523 F.2d 689, 702 (7th Cir. 1975); *Cash v. Califano*, 469 F.Supp. 129, 131 (W.D.Va.1979), *affirmed*, 621 F.2d 626 (4th Cir., 1980). *See generally DeLao v. Califano*, 560 F.2d 1384, 1389–1391 (9th Cir. 1977); *Tatum v. Mathews*, 541 F.2d 161, 166 (6th Cir. 1976); *Johnson v. Mathews*, 539 F.2d 1111, 1125 (8th Cir. 1976).

Further, 42 U.S.C. § 404 directs the Secretary to make proper adjustments whenever less than the correct amount of payment has been disbursed. Thus, Congress has

retirement plans other than Social Security. 435 U.S. at 721, 98 S.Ct. at 1382. In order to cover contingencies, these plans set aside sums of money on the basis of an assessment of the insurer's likely liability and therefore unforeseen contingencies jeopardize the insurer's solvency. The Supreme Court rejected retroactive recovery in light of the "grave consequences" that "drastic changes" in legal rules can have on such pension funds. *Id.* at 721–723, 98 S.Ct. at 1382–1383.

Here, the court believes that the retroactive application of *Goldfarb*, in the case of Mr. Novak, will have a relatively small impact on the Social Security Administration's resources. Further, in the court's view, any award could not extend beyond the date of *Frontiero v. Richardson, supra*, wherein the prohibition against gender-based dependency requirements was first enunciated. *See Cash v. Califano, supra* at 135; *Crumpler v. Califano, supra*. Finally, the Secretary's liability on retroactive § 402(f) claims will not be automatic, but will be limited to those claimants who pursue their claims on their own initiative. Widowers who filed before March, 1978 but after March, 1977 would receive retroactive benefits for less than twelve months. 42 U.S.C. § 402(j)(1). Those applying before March, 1978 and who were granted prospective benefits as of March, 1977, will be eligible for retroactive benefits only if they acted immediately to appeal their non-receipt of retroactive payment. In the case at bar, Harry Novak's application for widowers' benefits was treated by the Secretary as a pending application at the time of the decision in *Goldfarb*. Thereafter, plaintiff exhausted all administrative remedies and appealed to this court.

8. It is asserted that *United States v. Testan*, 424 U.S. 392, 96 S.Ct. 948, 47 L.Ed.2d 114 (1975) supports the claim that retroactive relief is barred by the doctrine of sovereign immunity. This court finds such an analysis to be unpersuasive. *Testan* dealt with the Tucker Act which was only jurisdictional in nature; it did not create any substantive right enforceable against the United States. 424 U.S. at 398, 96 S.Ct. at 953. The Supreme Court explained that the entitlement to money damages depends upon whether any federal statute can fairly be interpreted as mandating compensation by the Federal Government. *Id.* at 400, 96 S.Ct. at 954. Unlike the plaintiffs in *Testan*, Harry Novak seeks a judicial determination, authorized by statute, reversing the Secretary's decision and enforcing a substantive right granted by Congress. Further, case law indicates that exceptions to the doctrine of sovereign immunity exist. *See, e. g., Rhodes v. Weinberger*, 388 F.Supp. 437 (E.D.Pa.1975); *Dugan v. Rank*, 372 U.S. 609, 83 S.Ct. 999, 10 L.Ed.2d 15 (1963); *Larson v. Domestic & Foreign Commerce Corp.*, 337 U.S. 682, 69 S.Ct. 1457, 93 L.Ed. 1628 (1949).

unequivocally expressed its intention that a claimant receive the benefits to which he is entitled under the Act. Here, Harry Novak's claim for benefits is based upon a substantive right granted by Congress and that right is enforceable against the United States by the court's express power to reverse the Secretary.

This court finds that the doctrine of sovereign immunity, under these circumstances, does not bar an award of retroactive relief. Further, the standards for nonretroactivity, as articulated in *Chevron*, have not been met. Accordingly, the plaintiff's motion for summary judgment is granted and plaintiff is entitled to such benefits as he would have received had his application for § 402(f) benefits been honored initially.

So Ordered.