**BEERS v. FEDERAL SECURITY ADMINISTRATOR et al.**

**Civil Action No. 2144.**

United States District Court
D. Connecticut.

Feb. 26, 1948.
Judgment Affirmed Jan. 27, 1949.

---

[2] In 1948 Revision, 28 U.S.C.A. § 2680 (h, k).

184

J. J. Henry Muller, III, and Beers & Beers, all of New Haven, Conn., for plaintiff.

Adrian W. Maher, U. S. Atty. of New Haven, Conn., and Edward J. Lonergan, Asst. U. S. Atty. of Hartford, Conn., for defendants.

SMITH, District Judge.

The plaintiff, as administrator of the estate of one Perkins, brings this action against the Federal Security Administrator and the United States of America, claiming recovery of insurance benefits under the Social Security Act,[1] for a period prior to his death, or, in the alternative, an equivalent amount from the United States, upon checks issued to Perkins prior to his death but not cashed by him.

The checks, which came into the plaintiff's possession as administrator, contained a direction on their face that, if issued more than a year prior to July 1, 1946, they should not be cashed through the bank but sent to the Secretary of the Treasury for reissue. Accordingly, the checks were sent to the Secretary of the Treasury with a request for reinbursement which was referred to the Social Security Administration and denied by it. Administrative remedies were exhausted by the plaintiff, the denial being affirmed, and from the denial the plaintiff now appeals to this Court, joining an action in the alternative against the United States, on the checks, under the Tucker Act.[2]

The defendants contend that the checks were not payment and did not discharge the obligation of the Security Administrator to

---

[1] 42 U.S.C.A. § 405(g).

[2] 28 U.S.C.A. § 1346.

Perkins, that any recovery on that obligation must be had under the Social Security Act, that the failure to pay the amounts was an under-payment of benefits due, and that the under-payment may be paid out only in accordance with the provision of 42 U.S.C.A. § 404 to the individual (in this case, Perkins) or to the statutory beneficiary after his death. In this case there is no one who falls within the statutory classes of beneficiary to Perkins.

Defendants contend that the prohibition against assignment of benefits shows an intention that no one can be entitled to the payments except those specified in the Act, which would not include the plaintiff. The prohibition against assignments, section 407, provides as follows:

"The right of any person to any future payment under sections 401–409 of this title shall not be transferable or assignable, at law or in equity, and none of the moneys paid or payable or rights existing under sections 401–409 of this title shall be subject to execution, levy, attachment, garnishment, or other legal process, or to the operation of any bankruptcy or insolvency law.
* * *"

█ The prohibition is against transfers and assignments, at law or in equity, and would appear to include transfers by operation of law as well as voluntary transfers by the beneficiary. If payment is to be based upon the Act, therefore, as a "future payment" it appears to be prohibited by this section and no right of recovery under the Act has passed to the plaintiff as administrator.

It seems highly unlikely that the Congress was attempting to prohibit the negotiation by payees of checks issued to them as "right * * * to any future payment under sections 401–409 * * * not * * * transferable or assignable * * *."

█ Of course, ordinarily a check is not considered payment unless it is accepted as such with the intention that the delivery of the check operate as a release of the original obligation. Since this is not the usual understanding in check transactions, convincing affirmative evidence is ordinarily required to show that this was the understanding of the parties. Even though Perkins' long retention of the checks may be evidence that he considered them payment, it is hardly sufficient to show that this was the understanding of the defendants.

█ But whether or not it be considered that the checks were given and accepted as payment and extinguishment of the original duty of the defendants under the Social Security Act, it must be remembered that such checks are at least a conditional payment and the Congress, in the use of the term "any future payment", may have been using the term in that sense. The Circuit Court of Appeals for the Third Circuit points out in Anthony P. Miller, Inc., v. Commissioner of Internal Revenue[3] that, as a matter of common parlance, it is most common to speak of "paying" an obligation by giving one's check for it. The checks given were negotiable instruments, obligations of the United States, and in the hands of a holder for due course would have been collectible by action against the United States under the Tucker Act. Plaintiff is not a holder in due course. Defendants may raise any defenses against him which they could have relied upon against Perkins. No defenses against Perkins existed, however, and none appear to exist against the plaintiff on the checks.

█ It appears to the Court more likely that, in the term "future payment," the Congress was speaking of claims for payment which had not yet been certified as due and for which checks had not been drawn and issued than that it intended to make non-transferable by death the obligations of the United States issued in conditional payment of benefits already certified as due. It is true that both the Attorney General and the Comptroller General have ruled otherwise on somewhat similar questions arising under other Acts. This line of opinions appears to have had its origin, however, before the Tucker Act, when no

[3] Anthony P. Miller, Inc., v. Commissioner of Internal Revenue, 3 Cir., 1947, 164 F.2d 268, 269.

186

action could have been maintained against the United States on the checks.

In the amendments to the Act ending payments of future benefits to estates of deceased beneficiaries, the Congress did not specifically provide for disposition of funds represented by checks already properly issued but not negotiated. The defendants utilize a strained construction of the "error" provision to guide them in disposing of these funds. Perhaps that is the most desirable disposition in line with the spirit of the amendments. It may be, however, that the Congress felt that payments certified for months in which the beneficiary was still alive might well be used to pay debts of the estate incurred in those months. In any case, had the purpose been to stop these payments and add them to the fund available for future payments to other beneficiaries, no difficulty would have existed in finding apt language to accomplish that result.

The direction for return of the checks for reissue appears to have been adopted by analogy to 31 U.S.C.A. § 725t. No further certification by the Administrator is necessary, and his ruling that no payment should be made was erroneous. The claim here comes in time to require payment by the Treasurer, if the period set by 31 U.S.C.A. § 725t is applied. If it is not applied, the expenditure has already been authorized and funds made available to the Treasury for its payment under 42 U.S.C.A. § 401, and no time limit is set on the availability of the funds. The direction for return does not purport to destroy the validity of the claims on the checks, but rather to set up the mechanics on its settlement.

■ It would appear, therefore, that plaintiff had the choice of proceeding on the claim of the estate under the Act, for payments due and unpaid without error, or proceeding on the checks. Payment of either claim would extinguish the other. Plaintiff has based his claim primarily on the checks, although in addition to action directly on the checks against the United States he has also appealed from the ruling of the Security Administration concerning his right to be paid on the checks. Recovery, therefore, should be against the United States on the checks.

■ The appeal from the ruling of the Security Administration becomes moot on the merger of the claims on the checks in the judgment.

Judgment may be entered for the plaintiff to recover from the United States the amount of the ten (10) unnegotiated primary benefit checks payable to Perkins, issued to Perkins for the period from August, 1944 through May, 1945, a total of $230.70.

Form of judgment may be submitted on notice.