Dorothy **ELLENDER**, Angela Zamski, James Trowbridge, Lois W. Brunjes, and Verly Smith, individually and on behalf of all others similarly situated, Plaintiffs,

v.

Richard S. **SCHWEIKER**, Margaret M. Heckler, as Secretary of the Department of Health and Human Services, John Svahn, and Martha McSteen, individually and as Commissioner of the Social Security Administration, Defendants.

No. 82 Civ. 4816 (IBC).

United States District Court, S.D. New York.

Nov. 17, 1983.

**592**

John E. Kirklin, The Legal Aid Society, Civil Appeals & Law Reform Unit, New York City, Jeffrey Abrandt, Brooklyn Office of the Elderly, The Legal Aid Society, Brooklyn, N.Y., Eileen P. Sweeney, Bruce M. Fried, Washington, D.C., Toby Golick, Jonathan A. Weiss, Legal Services for the Elderly, New York City, John C. Gray, Jr., Brooklyn Legal Services, Corp. B., Brooklyn, N.Y., Leonard S. Clark, Nassau-Suffolk Law Services Committee, Inc., Bayshore, N.Y., for plaintiffs; Nancy Morawetz, Lester Helfman, New York City, Jane Stevens, Brooklyn, N.Y., E. Anne Hayes, Bayshore, N.Y., of counsel.

Rudolph W. Giuliani, U.S. Atty., S.D. N.Y., New York City, for defendants; Steven E. Obus, Asst. U.S. Atty., New York City, of counsel.

## OPINION

IRVING BEN COOPER, District Judge.

Plaintiffs seek an order for partial summary judgment, pursuant to Rule 57 of the Federal Rules of Civil Procedure, granting declaratory and injunctive relief against defendants' policies and procedures for collecting plaintiffs' alleged debts under the Supplemental Security Income (SSI) program by deductions from benefits due them under the Old Age, Survivors and Disability (OASDI) program. Additionally, plaintiffs seek an order, pursuant to Rule 24(a)(2) or 24(b)(2), to permit Jessie Savage to intervene as a plaintiff in this action. Defendants have cross-moved, pursuant to Rule 56 of the Federal Rules of Civil Procedure, for summary judgment dismissing the complaint.

### I. *The Facts*

The facts of the case are generally not in dispute and have been set forth in our previous opinion granting plaintiffs' motion for class certification, intervention, and a preliminary injunction. *See Ellender v. Schweiker*, 550 F.Supp. 1348 (S.D.N.Y. 1982). To better understand our decision which follows, however, we believe appropriate a brief reiteration of the facts leading up to the necessity of this litigation. As we set forth in our previous opinion,

The SSI program is a federally-funded public assistance program established under Title XVI of the Social Security Act. It provides minimum subsistence benefits to persons under 65 who are blind or disabled and whose other incomes and resources fall below a prescribed level set by statute.

The [OASDI] program, established under Title II of the Social Security Act, is an insurance program which provides retirement, disability and survivor benefits to former wage earners who have contributed to the program for a sufficient number of calendar quarters. Once an eligible wage earner can no longer work due to age, disability, or death, funds are paid to him or his survivors from the OASDI 'trust fund' administered by the Social Security Administration.

Even though both programs are under the auspices of the Social Security Administration, they are separate and distinct, and exist pursuant to different statutory authority. They have different eligibility requirements and were designed to serve entirely separate groups. SSI is a needs-based program funded from general revenues. OASDI payments, funded through a trust fund, are based on contributions of the wage earner, number of working years and age of retirement. Aged, blind or disabled OASDI recipients may be entitled to receive SSI payments in addition provided they meet the prerequisites of that program.

For reasons which remain largely unexplained, between January, 1974 and December, 1975 the Social Security Administration overpaid SSI recipients, in-

cluding plaintiffs in the instant action. The only explanation for these overpayments in the record before us is that in one instance they resulted from 'computer error.' ... The total amount of SSI overpayments nationwide was approximately $1 billion as of December 31, 1981.

*Id.* at 1350–51.

All of the plaintiffs are current recipients of OASDI benefits under Title II of the Social Security Act, 42 U.S.C. § 401 *et seq.* In addition, all of the plaintiffs were past recipients of benefits based on old age or disability under the SSI program established by Title XVI of the Social Security Act, 42 U.S.C. § 1381 et seq. According to the Social Security Administration (SSA) records, each plaintiff was overpaid by the SSI program and has not fully repaid such overpayment.

Defendants have devised a special program, known as the Backlogged Debt Management Project (BDMP), for the purpose of collecting from OASDI recipients any overpayments made while they were receiving SSI. More specifically, the BDMP was designed to resolve by collection, waiver or write-off 412,683 SSI overpayment cases in a "deferred" or "delinquent" status, with an approximate value of $214 million. Unlike other SSI beneficiaries who had received overpayments (non-BDMPs), the BDMP group never received any notice advising them of the reason for overpayment or the time period of overpayment.

The BDMP utilizes standardized notices that are sent via mail in an attempt to seek reimbursement and eventual collection of overpaid funds. The initial notice which was not received by all of the class members, the "Supplemental Security Income Notice of Overpayment Action," requests repayment of any overpayments, permits the recipient to authorize withholding of OASDI benefits to repay the SSI overpayment, and recites the rights of the recipient to waiver and appeal. The second notice, Supplemental Security Income Notice of Action to Recover Overpayment [hereinafter "For Your Convenience" notice], which for many beneficiaries was the first one received, merely read:

SUPPLEMENTAL SECURITY INCOME NOTICE OF
ACTION TO RECOVER OVERPAYMENT

| FROM: | Department of Health and Human Services Social Security Administration | 333 Avenue X Brooklyn, NY 11223 |
|---|---|---|

Date:  April 19, 1982
Social Security Number:

There is an outstanding $1954.86 balance on your supplemental security income overpayment due the Social Security Administration.

Please refund the $1954.86 immediately. Make your check or money order payable to the Social Security Administration, social security number          , and mail it in the enclosed envelope.

If you cannot make full refund at this time, please refund as much as you can and contact us to arrange for refunding the balance. For your convenience, we can withhold the balance of your overpayment from your social security benefit.

If you would like to use this method of repaying your overpayment, please sign the attached statement and return it to us in the enclosed envelope.

If you wish to discuss a different method of repaying the overpayment, call, write or come into this office.

Enclosures                                              627–3351

-----------------------------------------------------------------------

_____
                Name

_____
                SSN

For my convenience, please withhold my full social security benefit each month until my supplemental security income (SSI) overpayment of $      is fully recovered.

_____        _____
         Signature                                    Date

If these notices do not cause the recipient to reimburse the government, subsequent notices are sent. The government's guidelines also provide for telephone and personal contact with the individual to resolve the overpayment.

Although we have emphasized the plight of the class members whose daily lives have been severely affected by the Government's Backlogged Debt Management Project, we are compelled to repeat some of the problems they face:

Dorothy Ellender is a 75 year old widow whose sole present income is a monthly OASDI check for $413.90. She also received benefits under the SSI program between January, 1974 and December 5, 1975 at the monthly rate of $161.85. On October 5, 1978 Mrs. Ellender received a form from the Social Security Administration informing her that she had received a $4,264.95 SSI overpayment during that period. Even though this form advised her that she had a right to appeal the determination of the overpayment or seek a waiver, she did neither because she was no longer receiving SSI payments at that time and felt that the notice was 'entirely erroneous.'

She heard nothing further concerning the alleged overpayment until she received a copy of the notice at issue here on June 8, 1982, which stated that she must refund $4,264.95 *immediately.* (emphasis ours) She asserts, 'I was ex-

tremely frightened and upset when I received [the notice].... I am having a difficult time managing on my Social Security Widow's benefit check.... I could not manage financially if this check was reduced.' Mrs. Ellender further maintains that she understood once she received the notice 'that my only choice was either to repay immediately, which is impossible since I do not have the money, or to authorize withholding the money from my Social Security check.'

*Ellender v. Schweiker, supra,* at 1353–54.

Mrs. Ellender's limited economic status is typical of the plight of almost every class member. As discussed in our previous opinion:

[E]ach plaintiff is elderly, sick and/or infirm, and for each OASDI benefits represent the primary or sole and exclusive means of subsistence and support....

In the main, plaintiffs pay all monthly expenses out of their OASDI check and because of old age and/or disability no other sources of income are available. Further, since the Social Security Administration's overpayment notices fail to inform them of their rights and requisite information, their decision to authorize OASDI reductions never represents a meaningful and voluntary decision; that defendants' frightening, unauthorized and menacing debt collection methods

force them into a responsive decision with respect to such overpayments which would prevent them from meeting their monthly expenses....

Although the record fails to disclose the number of SSI overpayment cases in New York and the amount of money claimed by defendants in these cases, its significance would surely be miniscule when compared to the human tragedy of elderly and disabled people deprived of their subsistence incomes....

As it appears to us, it should be expected that under the special circumstances here revealed embracing the vast majority affected by defendants' procedures, there is bound to ensue a sharp increase in the amount and degree of physical and mental illness affecting such recipients, accompanied by anguish precipitated and even pushed to the breaking point—to say nothing of the staggering cost increase entailed by the Government.

Id. at 1353, 1357, 1358, 1361.

A more extensive presentation of other class members has been set forth in our prior opinion.

On August 12, 1982 Chief Judge Motley granted a temporary restraining order enjoining defendants "from reducing the OASDI [Title II] grant of any plaintiff or member of the proposed plaintiff class who has received a notice from defendants in the form shown in [the 'For Your Convenience' notice]," "pending the hearing and determination of the plaintiffs' motion for preliminary injunction."

Pursuant to the order, defendants refrained sending supplemental notices in connection with the BDMP and ceased withholding Title II benefits from those BDMP recipients who agreed orally or in writing to repay any Title XVI overpayment through future Title II benefits.

On October 26, 1982 we issued our opinion granting plaintiffs' motion to certify a class of "all persons in New York who currently receive OASDI benefits pursuant to 42 U.S.C. § 1381 *et seq.* and who have been or will be informed [either orally or in writing] that they must refund alleged overpayments of SSI benefits either by direct repayment or by agreeing to recovery of the overpayment from their monthly OASDI benefits," 550 F.Supp. at 1361, and permitting the intervention of additional plaintiffs. As part of that same opinion we granted the plaintiffs' motion for a preliminary injunction enjoining defendants from reducing the OASDI grant of any class member and denied the defendants' motion to dismiss except as to plaintiffs' claims for punitive damages. 550 F.Supp. at 1357, 1361.

On November 9, 1982 defendants filed a motion to reargue the Court's decision insofar as it denied defendants' motion to dismiss plaintiffs' claims for compensatory damages allegedly arising out of constitutional violations. This motion was withdrawn on April 14, 1983 by consent of the respective parties.

Subsequent to our opinion, the parties engaged in discussions aimed at resolving many of the issues raised by plaintiffs' complaint. To that end, conferences with the Court were held; the parties also requested several postponements on the settlement date of plaintiffs' proposed order and thereafter requested that the Court hold plaintiffs' proposed order in abeyance pending further notice from either of the parties. *See* Jamie Vincent Gregg's letter to the Court of November 15, 1982. It was not until June 27, 1983 that plaintiffs renewed their request to settle the order. In her letter of June 27, 1983 to the Court, Toby Golick, Esq., attorney for plaintiffs, advised the Court that although the parties agreed on a number of matters, the issue of whether cross-program recovery is permitted still remained unresolved and that plaintiffs would be renoticing the order for settlement on July 8. Additionally, plaintiffs made known their intention to move for partial summary judgment.

Further written communications were received from defendants' attorney, Jamie Vincent Gregg, Esq., Assistant United States Attorney, on July 8, 1983 requesting a brief delay in signing plaintiffs' proposed

order for several reasons: (1) the intention of defendants to submit cross-motions for summary judgment, (2) the short delay requested would not unduly prejudice plaintiffs, given their long acquiescence to the present status quo, and (3) Mr. Gregg's departure from the United States Attorney's Office as of August 1, 1983 would require his successor to become familiar with this complex matter. In response to Mr. Gregg's letter, Ms. Golick wrote the Court on July 13 advising us of her intention to move to intervene on behalf of a group of proposed plaintiffs alleged to be part of the class defined in our October 26, 1982 opinion.

On July 22 and 23 plaintiffs filed motions for partial summary judgment and intervention respectively. Defendants filed their motion for summary judgment dismissing the complaint on September 13.

## II. *The Law*

Before addressing the legality of cross-program recovery, the constitutionality of defendants' notices and the correctness of retroactive repayments, we must set forth the basis of jurisdiction and the constituency of the class.

### A. *Jurisdictional Basis*

■ Jurisdiction over the plaintiffs' claims is grounded on mandamus, 28 U.S.C. § 1361, added by the Mandamus and Venue Act of 1962, 76 Stat. 744.[1] Social security benefit cases predicated on mandamus jurisdiction are not a new phenomenon in this Circuit. *See, e.g., Ellis v. Blum,* 643 F.2d 68, 78 (2d Cir.1981); *Barnett v. Califano,* 580 F.2d 28, 31 (2d Cir.1978); *White v. Mathews,* 559 F.2d 852, 856 (2d Cir.1977), *cert. denied,* 435 U.S. 908, 98 S.Ct. 1458, 55

L.Ed.2d 500 (1978); *Frost v. Weinberger,* 515 F.2d 57, 62 (2d Cir.1975), *cert. denied,* 424 U.S. 958, 96 S.Ct. 1435, 47 L.Ed.2d 364 (1976). Indeed, our Court of Appeals has held on several occasions that mandamus jurisdiction is appropriate to review procedures of the SSA Secretary regardless of the facially restrictive jurisdictional bases for evaluating social security claims provided in the Social Security Act.[2] *See Ellis v. Blum, supra,* at 82; *Barnett v. Califano, supra; White v. Mathews, supra.* Accordingly, we do not hesitate to base jurisdiction on the mandamus statute.

### B. *Class Constituency*

In November 1982, subsequent to our aforementioned opinion, defendants advised plaintiffs that a group of persons was discovered who had consented to cross-program recovery prior to the BDMP (non-BDMPs). Although defendants requested consensual modification of the injunction, plaintiffs did not consent to such a modification, *see* Plaintiffs' Memorandum of Law in Support of Motion to Intervene, page 3, and instead sought to have the non-BDMPs intervene.

The two groups are distinguishable by the notices sent to the beneficiaries. The notices received by the non-BDMPs advised the recipients of: (1) the amount of overpayment, (2) period in which it occurred, (3) reason for the overpayment, (4) statement of the recipient's right to appeal and/or reconsideration, and (5) the conditions requisite to waive the repayment. In comparison, members of the BDMP group who received the most complete notices were still only informed of the amount of overpayment and their rights to appeal and waiver; many who received no more than

---

**1.** Section 1361 provides: "The district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff."

**2.** Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g) provides, in relevant part, "Any individual, after any final decision of the Secretary made after a hearing to which he was a party ... may obtain a review of such decision

by a civil action ... brought in the district court of the United States..."

Furthermore, section 205(h), 42 U.S.C. § 405(h), provides, in relevant part: "... No action against the United States, the Board, or any officer or employee thereof shall be brought under section 24 of the Judicial Code of the United States to recover on any claim arising under this title."

the "For Your Convenience" form were not told of their appeal and waiver rights.

Furthermore, it is evident that both Chief Judge Motley's temporary restraining order and our October 1982 opinion were to encompass only members of the BDMP group. When the plaintiffs originally brought this action, they were not aware of the existence of the non-BDMP group; their complaint and amended complaint were filed specifically on behalf of those who received the "For Your Convenience" form.

■ In view of the differences between the BDMP and non-BDMP groups and of the limited nature of the class when the temporary restraining order and preliminary injunction opinion were filed, we decline at this time to extend the class to include non-BDMPs.

*Legality of Cross-Program Recovery*

Section 207(a), 42 U.S.C. § 407(a), specifically bars the right of OASDI recipients to future benefit payments from being transferred or assigned, and exempts such payments from legal process. The statute reads:

> (a) The right of any person to any future payment [of OASDI] shall not be transferable or assignable, at law or in equity, and none of the moneys paid or payable or rights existing under this subchapter shall be subject to execution, levy, attachment, garnishment, or other legal process, or to the operation of any bankruptcy or insolvency law.

Congress has carved out several exceptions to the prohibition of § 207(a) against transferring or assigning OASDI benefits. For instance, a beneficiary's rights to OASDI payments may be withheld by the Secretary of the SSA if the recipient has been overpaid OASDI moneys. 42 U.S.C. § 404(a). In parallel fashion, Congress has

authorized the Secretary to reduce SSI payments when a beneficiary receives an SSI overpayment. 42 U.S.C. § 1383(b)(1). However, Congress has never provided for a reduction in future OASDI benefits in order to compensate for SSI overpayments.[3]

Nevertheless, the Secretary interpreted § 207(a) to prohibit only involuntary transfers or assignments of OASDI benefits, 20 C.F.R. § 416.570, and the SSA devised procedures to recoup SSI overpayments from OASDI recipients who consented. *See Ellender v. Schweiker, supra*, at 1352–53. Thus, according to the interpretation of the SSA, an OASDI recipient may voluntarily agree to allow the Secretary to withhold part of his or her monthly benefit in order to repay an overpayment.

■ The Secretary is empowered to adopt regulations, pursuant to statutory provisions, which implement congressional will. *Manhattan General Equipment Co. v. Commissioner of Internal Revenue*, 297 U.S. 129, 134, 56 S.Ct. 397, 399, 80 L.Ed. 528 (1936). In certain sections of the Social Security Act, Congress specifically gave the Secretary the power to prescribe standards by which the Act is to be administered. *See, e.g.*, § 1902(a)(17)(B), 42 U.S.C. § 1396a(a)(17)(B) (Medicaid). These standards have been given "legislative effect." *Schweiker v. Gray Panthers*, 453 U.S. 34, 43–44, 101 S.Ct. 2633, 2640, 69 L.Ed.2d 460 (1981) (Medicaid benefits); *Batterton v. Francis*, 432 U.S. 416, 425–26, 97 S.Ct. 2399, 2405–06, 53 L.Ed.2d 448 (1977) (Aid to Families with Dependent Children—Unemployed Fathers program). Although Title II, under which the instant action falls, authorizes the Secretary to establish regulations appropriate to carrying out the Federal Old-Age, Survivors and Disability Benefits statute, 42 U.S.C. § 405(a), it does not prescribe standards prerequisite to the statute becoming effective. *See Batterton*

---

**3.** In *McDaniels v. Heckler*, 571 F.Supp. 880 (D.Md.1983), a case with facts identical to the instant case, the court found that since OASDI overpayments may be taken out of OASDI benefit monies and since the same is true for SSI overpayments, a reading of section 207(a) which

does not permit voluntary cross-program recovery is too narrow. The court cited the applicable sections of the Social Security Act and the Secretary's regulations, but cited no other authority to support its holding. As will be seen below, we respectfully disagree.

598

v. *Francis*, 432 U.S. 416, 424–25, 97 S.Ct. 2399, 2405, 53 L.Ed.2d 448 (1977) (Congress delegated less power to the SSA Secretary in Title II than it did in Title VI). Since the Secretary's interpretative regulations under Title II may be promulgated only to further the statute and are not entitled to legislative deference, if they "operate to create a rule out of harmony with the statute [the regulations are] a mere nullity." *Manhattan General Equipment Co. v. Commissioner of Internal Revenue, supra*, 297 U.S. at 134, 56 S.Ct. at 399.

The question thus becomes whether voluntary, as well as involuntary, "transfers or assignments" are included within the meaning of § 207(a) as the Secretary contends and as the collection procedures the SSA has implemented assume.

The meaning of a statute may be discerned by a review of its language, intent, and legislative history. *See Watt v. Alaska*, 451 U.S. 259, 265–66, 101 S.Ct. 1673, 1677–78, 68 L.Ed.2d 80 (1981); *Southeastern Community College v. Davis*, 442 U.S. 397, 411, 99 S.Ct. 2361, 2369, 60 L.Ed.2d 980 (1979); *Teamsters v. Daniel*, 439 U.S. 551, 566 n. 20, 99 S.Ct. 790, 800 n. 20, 58 L.Ed.2d 808 (1979).

"The starting point in every case involving construction of a statute is the language itself." *Watt v. Alaska, supra*, 451 U.S. at 265, 101 S.Ct. at 1677 (*quoting Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 756, 95 S.Ct. 1917, 1935, 44 L.Ed.2d 539 (1975) (Powell, J., concurring)). The literal words used in § 207(a) are clear and unambiguous: "[t]he right of any person to any future payment [of OASDI] shall not be transferable or assignable [or] ... subject to ... other legal process."

Regarding this section, the Supreme Court has stated that "section 407 ... imposes a broad bar against the use of any legal process to reach all social security benefits." *Philpott v. Essex County Welfare Board*, 409 U.S. 413, 417, 93 S.Ct. 590, 592, 34 L.Ed.2d 608 (1973). We find a federal court that has addressed the question of whether section 207(a) includes transfers by operation of law as well as voluntary transfers and found, after quoting the section's language, in the affirmative. *Beers v. Federal Security Administrator*, 80 F.Supp. 183, 185 (D.Conn.1948), *aff'd*, 172 F.2d 34 (2d Cir.1949).[4] In sum, the statutory language appears clear on its face; it fails to evince any indication that "transfer or assignment" means involuntary, not voluntary, transfers or assignments.

The second factor which must be considered in construing a statute is its intent. *See Watt v. Alaska*, 451 U.S. 259, 265–66, 101 S.Ct. 1673, 1677–78, 68 L.Ed.2d 80 (1981). OASDI was created to provide for the care and maintenance of the elderly, survivors, and the disabled. *See, e.g., Department of Health v. Davis*, 616 F.2d 828, 831 (5th Cir.1980). Section 207(a) was promulgated to protect social security benefits from the reach of creditors. *Neavear v. Schweiker*, 674 F.2d 1201, 1205–06 (7th Cir.1982); *Department of Health v. Davis, supra*, at 831. The Supreme Court has held that when the state is "performing its statutory duty to take care of the needy, [it is not] in a preferred position as compared with any other creditor." *Philpott v. Essex County Welfare Board*, 409 U.S. 413, 416, 93 S.Ct. 590, 592, 34 L.Ed.2d 608 (1973). See also *Neavear v. Schweiker, supra*, at 1205 (Social Security Administra-

**4.** The question whether the language of section 207(a) encompassed voluntary as well as involuntary transfers was hinted at recently in *Tidwell v. Schweiker*, 677 F.2d 560, 567 (7th Cir. 1982). *Tidwell* involved the seizure by state mental institutions of patients' OASDI benefits after a patient or the patient's representative signed a form of consent. The court found that the form constituted a transfer or assignment in violation of section 207 since it failed to advise patients that they would receive payment whether or not they signed, that it was revocable, and

that the benefits covered were not subject to legal process. *Id.* at 568. The court did not directly reach the issue of whether the language of section 207(a) included voluntary as well as involuntary transfers or assignments. Thus, its statement that unless the flaws in the form are corrected "it cannot be said that [the form] is voluntary or that the patient retains enough control to remove the agreement from the ambit of section 407," *id.*, presents an observation with which we respectfully disagree.

tor does not have rights other creditors lack). Permitting OASDI recipients to voluntarily transfer their benefits, which are for many recipients their sole and very limited source of income, to the Government creditor is not in the spirit of protection and care mandated by the statutory framework.

■ Legislative history provides the third source of interpretation of statutes. *See Blum v. Bacon*, 457 U.S. 132, 142, 102 S.Ct. 2355, 2361, 72 L.Ed.2d 728 (1982) (deference given to conclusion of Secretary of SSA where it is strongly supported by legislative history); *Neavear v. Schweiker, supra,* at 1205 (interpretation of Secretary of SSA of section 207(a) fails when it is not supported by any legislative history, policy reasons or surrounding text). The legislative history of the Social Security Act, enacted originally in 1935 and amended in 1939, fails to discuss section 207(a). However, section 207(b),[5] enacted on April 20, 1983 in order to restrict modification of section 207(a), is briefly elaborated upon in legislative history which reveals that, after the passage of the Bankruptcy Reform Act of 1978, hundreds of cases considered social security and SSI benefits of debtors to be income for purposes of a Chapter XIII bankruptcy. Section 207(b) was passed to prohibit assignment of these benefits "not-withstanding any other provisions of law." H.Rep. No. 1900, Pub.L. 98–21, 98th Cong., 1st Sess. 82–83, *reprinted in* [1983] U.S. Code Cong. & Ad.News 143, 301–02.[6] Congress' clear and stringent interpretation of the prohibition on transfer or assignment of benefits in section 207(b) further compels us to strictly interpret that clause to prohibit voluntary as well as involuntary transfers or assignments.[7]

■ In short, the SSA Secretary's interpretation of section 207(a), which permits voluntary but not involuntary transfers or assignments of OASDI benefits, is not entitled to legislative deference and is "out of harmony with the statute." *Manhattan General Equipment v. Commissioner of Internal Revenue, supra,* 297 U.S. at 134, 56 S.Ct. at 399. The plain language of the prohibition as well as the statute's intent and legislative history all point to an interpretation that does not permit cross-program recovery. Therefore, we believe that the Secretary's regulation is "a mere nullity," *id.,* and the SSA has no authority to reduce payments to OASDI beneficiaries in order to recover SSI overpayments regardless of whether or not the reductions are made with the consent of beneficiaries.[8]

---

5. Section 207(b) of the Social Security Act, 42 U.S.C. § 407(b) provides:

   (b) No other provision of law, enacted before, on, or after the date of this section, may be construed to limit, supercede or otherwise modify the provisions of this section except to the extent that it does so by express reference to this section.

6. In *McDaris v. Svahn,* CV F 82–459 EDP (E.D. Cal. Feb. 4, 1983), a case factually similar to the instant case, the court made its finding that voluntary cross-program recovery is legal on the basis of two bankruptcy cases that permitted OASDI benefits to become part of Bankruptcy Chapter XIII estates with the beneficiaries' consent and on the basis of several SSA regulations. Since subsequent to *McDaris* Congress enacted section 207(b) which undercuts the *McDaris* decision, and since, as we stated above, the SSA regulations are not entitled to deference because they are not in harmony with the statute, our conclusion differs from that of the *McDaris* court.

7. Plaintiffs additionally emphasize that when Congress enacted section 207(b), it declined to authorize cross-program recovery even though the Secretary specifically requested such a program in her 1983 budget proposals. Defendants counter that despite statements by several Congressmen illustrating that Congress was aware of the Secretary's program of voluntary cross-program recovery, the legislative body did not overrule it when section 207(b) was added to section 207(a). We do not undertake to decide which of the two interpretations is correct; it is enough for us that by enacting section 207(b), Congress decided to provide additional protection to the benefits received by OASDI recipients.

8. Since we find that cross-program recovery is illegal, we need not decide plaintiffs' contention that the Secretary's regulation allowing for voluntary transfers or assignments of OASDI monies violated the Administrative Procedure Act, 5 U.S.C. § 551 *et seq.*

*Due Process Requirements*

▆ We do not question the Government's legal right to collect back all legitimate overpayments of SSI benefits from recipients who are presently able to repay their debts after they obtain their full OAS-DI checks. An appropriate means of advising recipients of the overpayments is through notice forms which most emphatically must meet procedural due process requisites. We find that, to be constitutionally adequate, the notices the Secretary sends must explain to the beneficiaries: (1) The time periods during which overpayment of SSI benefits arose; (2) The amount of overpayment in each time period and in total; (3) The amount of any prior repayments; (4) The reason for overpayment; (5) That the recipient has a right to appeal and/or reconsideration; (6) That under specified conditions, the recipient may have the right to waive repayment; (7) That the law prohibits money received through OAS-DI to be withheld by the Secretary in order to repay SSI overpayments and that no legal process may attach to those benefits (i.e., that transfer or assignment of OASDI benefits, whether voluntary or involuntary, and legal processes taking those benefits, violate section 207(a), 42 U.S.C. § 407(a)); and (8) That the time period in which the Government should have collected the overpayments may have passed, but that if the recipient pays back any installment or writes a letter acknowledging the overpayment, the Government's right to collect may be revived (i.e., the statute of limitations may have run, but partial repayment or a written acknowledgement may revive the claim).

The notice of overpayment sent out by the Secretary to more than 22,000 class members merely stated the amount of overpayment, asked for a refund, and suggested, "for [the recipient's] convenience," the balance of the overpayment could be withheld from OASDI payments. Some class members additionally received a prior notice informing them of their rights to appeal and waiver. After we issued our October 26, 1982 opinion, the Secretary, in the Government's Proposed Order Granting a Preliminary Injunction, Class Certification, and Intervention, advised sending notices to the plaintiff class notifying them of their right to appeal and the conditions under which they could waive the repayments.

Due process prevents federal action that causes a deprivation of a protected liberty or property interest. *Mathews v. Eldridge,* 424 U.S. 319, 332, 96 S.Ct. 893, 901, 47 L.Ed.2d 18 (1976).[9] Thus, when there is a threat that an individual's property will be taken, procedural due process requires that he or she receive "notice, reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 314, 70 S.Ct. 652, 657, 94 L.Ed. 865 (1950).

There can be no doubt that a notice which merely advises OASDI recipients of the fact and amount of alleged SSI overpayments offers the aggrieved plaintiffs no tangible information for them to dispute. If they do not know when the alleged overpayments occurred, the amount of overpayment in each time period, the amount of prior repayments, and the reason for the overpayment, it is impossible for them to check and compare their own records to determine whether or not they are in accord with the claims asserted in the notice. The consequence of such inadequate notice is that the Secretary's determinations remain final and unchallenged; the elderly beneficiaries have no evidence on which to object. "Unless a person is adequately informed of the reasons for denial of a legal interest, a hearing serves no purpose—and resembles more a scene from Kafka than a constitutional process. Without notice of the specific reasons ... a claimant is re-

---

**9.** A person's interest in social security benefits has been deemed by the Supreme Court to be protectable property under the fifth amend-ment. *Mathews v. Eldridge,* 424 U.S. 319, 332, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976).

duced to guessing what evidence can or should be submitted in response and driven to responding to every possible argument ... at the risk of missing the critical one altogether." *Gray Panthers v. Schweiker,* 652 F.2d 146, 168–69 (D.C.Cir.1980). *See also Vargas v. Trainor,* 508 F.2d 485, 490 (7th Cir.1974), *cert. denied,* 420 U.S. 1008, 95 S.Ct. 1454, 43 L.Ed.2d 767 (1975) (where reduction of public assistance to the aged, blind, and disabled citizens in Illinois was threatened, the court stated that "[n]otice cannot be adequate if it does not include the reasons or grounds for the action."); *Escalera v. New York Housing Authority,* 425 F.2d 853, 862 (2d Cir.), *cert. denied,* 400 U.S. 853, 91 S.Ct. 54, 27 L.Ed.2d 91 (1970) (in a hearing for termination of public housing for tenants, due process requires that tenants be given notice of all items which may be considered against them so that they may effectively rebut the evidence.).

The notice requirements are particularly compelling in light of the population to whom the forms are being sent. The court in *Gray Panthers v. Schweiker, supra,* at 169, noted Congress' recognition "that the elderly, as a group, are less able than the general populace to deal effectively with legal notices...." Without forms which paint distinctly the complete picture of the alleged overpayments to the plaintiffs, these elderly OASDI recipients have virtually no fighting chance to object to the Secretary's claims. It is therefore clear to us that notices which do not state the time periods of the SSI overpayments, the amount of overpayment in each period, any prior repayments, and the reason for the overpayment do not satisfy procedural due process requirements.

Our conclusion is bolstered by Supreme Court definitions of due process. In *Mathews v. Eldridge,* 424 U.S. 319, 335, 96 S.Ct. 893, 903, 47 L.Ed.2d 18 (1976), the Court set forth a three part balancing test requiring consideration of: (1) the private interest affected by government action, (2) the risk of error in the procedure employed which results in depriving the individual of his or her interest and any probable value of different procedural safeguards, and (3) the Government's interest, including the function involved and fiscal and administrative burdens. *See also Goldberg v. Kelly,* 397 U.S. 254, 262–63, 90 S.Ct. 1011, 1017–18, 25 L.Ed.2d 287 (1970) ("consideration of what procedures due process may require ... must begin with a determination of the precise nature of the government function involved as well as of the private interest that has been affected by governmental action.") (quoting *Cafeteria and Restaurant Workers Union v. McElroy,* 367 U.S. 886, 895, 81 S.Ct. 1743, 1748, 6 L.Ed.2d 1230 (1961)).

The first factor of the balancing test concerns the effect of government action on private interests. In *Mathews, supra,* disability benefits were terminated before an evidentiary hearing was held. The Supreme Court found that the worker receiving disability benefits could also receive income or other support. Thus, the termination of benefits before a hearing but after a thorough investigation did not result in substantial deprivation to the worker, especially when it was very likely that he could find employment to make up for the temporary loss. *Id.* 424 U.S. at 340–41, 96 S.Ct. at 905–06. The Court distinguished the worker's situation from the welfare-assisted plaintiffs in *Goldberg v. Kelly, supra,* who would have been deprived of their very subsistence if their benefits had been terminated before eligibility hearings were held. *Mathews, supra,* at 340–41, 96 S.Ct. at 905–06.

We believe that the OASDI recipients in the instant case are more similarly situated to the plaintiffs in *Goldberg* than to the plaintiff in *Mathews.* Although it is true that eligibility for OASDI is not based on financial need and that recipients may have other sources of income, all of the class members, just a few short years ago, received SSI payments because they fell below a minimal poverty level. Furthermore, the financial situation of the named class members support our supposition that the great majority of class members live barely

above the subsistence level. Notices which merely inform these recipients of money owing to the Government, resulting in payment by some beneficiaries who do not understand or are frightened by bureaucratic procedures, deprive those recipients of the only money they have to live on. The effects of government action on private individuals in this case are most severe.

The second factor in the *Mathews* balancing test is the risk of error in the procedures used to deprive the plaintiff of his or her property interest and the probable value of different procedural protections. *Mathews, supra,* at 335, 96 S.Ct. at 903. In *Mathews*, before disability benefits were terminated, the SSA gathered medical information from treating physicians and recipients and informed the recipient of its assessment and the reasons therefor so that he or she could submit new arguments. The risk of erroneous determinations in these circumstances, the Court concluded, was minimal. *Mathews, supra,* at 343–47, 96 S.Ct. at 907–08. The procedures at issue in *Mathews* were contrasted by the Court with those in *Goldberg, supra.* In *Goldberg* the procedure for welfare recipients to challenge termination of their benefits was only by way of written submissions, which the Supreme Court found did not effectively express the recipient's poor position. *Id.* 397 U.S. at 269, 90 S.Ct. at 1021. Likewise, the notice sent to Medicare claimants in *Gray Panthers, supra,* which did not inform them of reasons for denial of benefits, was found by the District of Columbia Circuit Court of Appeals to be so inadequate that no well-reasoned argument could be presented in opposition. The Court found a high risk of error resulting in deprivation of benefits to the elderly which violated procedural due process. *Gray Panthers, supra,* at 168–69.

The notices received by Dorothy Ellender and the other class members, like those received in *Gray Panthers,* were so vague that the plaintiffs did not have any evidence on which to base a challenge. The risk of error in the Secretary's procedure undoubtedly was substantial.

The third part of the balancing test concerns the Government's interest. *Mathews, supra,* 424 U.S. at 335, 96 S.Ct. at 903. In *Mathews*, the Government was requested to expend a large sum of money as well as carry a heavy administrative burden by providing pretermination hearings in disability benefits cases. The Court found that the cost to the Government outweighed the benefit to the recipients. *Mathews, supra,* at 347–48, 96 S.Ct. at 908–09. In the instant case, however, the Government will not be forced to incur large expenses by merely increasing the amount of information contained in notices to the OASDI beneficiaries. In fact, providing more complete information benefits the Government as the representatives of the "public interest." *See id.* at 347, 96 S.Ct. at 908. In *Goldberg, supra,* the Supreme Court stated:

> Moreover, important governmental interests are promoted by affording [welfare] recipients a pre-termination evidentiary hearing. From its founding the Nation's basic commitment has been to foster the dignity and well-being of all persons within its borders. We have come to recognize that forces not within the control of the poor contribute to their poverty .... Welfare, by meeting the basic demands of subsistence, can help bring within the reach of the poor the same opportunities that are available to others to participate meaningfully in the life of the community....

*Id.* 397 U.S. at 264–65, 90 S.Ct. at 1018–19.

We believe that it is similarly in the interests of the Government to refrain from providing vague notices to OASDI beneficiaries, most of whom barely live above the subsistence level, which merely inform them of debts owed to the Government but do not advise them of the time periods of the overpayments, the amount of overpayment in each time period,[10] any pri-

---

**10.** As the plaintiffs correctly note, the Secretary's own regulations require that notices of overpayment include the amount of such overpayment in each time period:

or repayments, and the reason for overpayment. The omission of these elements vital to beneficiaries who wish to object to the overpayment constitutes a denial of due process under the fifth and fourteenth amendments.

The plaintiffs also contend that, as a matter of procedural due process, they must be notified of their rights to waiver and to appeal. First, we note that those members of the class who received the "Notice of Overpayment—Refund Requested" form prior to the "For Your Convenience" form have already been informed of these rights. Second, we reiterate that in the Government's Proposed Order Granting a Preliminary Injunction, Class Certification and Intervention, the Government's suggested notice included information about these rights. The parties thus seem to be in accord about the necessity of providing information, clearly set forth in the notices, on waiver and appeal rights.

We nevertheless find it essential to stress the constitutional significance of stating in comprehensible terms to OASDI recipients their waiver and appeal rights. Without notice of those fundamental entitlements, plaintiffs would be denied all opportunity to present their objections. *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314, 70 S.Ct. 652, 657, 94 L.Ed. 865 (1950). Furthermore, the *Mathews v. Eldridge* balancing test applied to the exclusion of these rights would no doubt tilt favorably toward the plaintiffs: Notices lacking information regarding waiver and appeal rights, resulting in payment by at least some plaintiffs who could not afford the expenditure, would deprive those beneficiaries of their means of survival; the risk of error from these omissions was substantial since plaintiffs would not even preliminarily know they had rights to oppose the Secretary's determination and would therefore not argue about the overpayment; and the Government's expense in providing notice of these rights, and consequently, of the forums for the expression of objections, is incomparably minimal next to the cost of repayments of money that may not be owing by individuals who struggle to make ends meet. In short, as the Government recognizes, notice of waiver and appeal rights before money is paid back to the Government by those who once allegedly received SSI overpayments are imperative requirements of due process.

■ Plaintiffs also contend that due process further demands that the notices of overpayment inform plaintiffs of two legal matters: first, that section 207(a) prohibits transfer or assignment of rights to any future OASDI benefits and bars the attachment of legal process to such benefits, and second, that the time period in which the Government should have collected the overpayment may have expired but that partial repayment or written acknowledgement of the debt may revive the expiration date.[11] We agree with plaintiffs that notices lacking this legal information are constitutionally deficient.

In setting forth the due process requirements of notice for the purpose of affording aggrieved parties the opportunity to present their objections, the Supreme Court stated that notice must be "reasonably calculated to convey the required information," and it must take into account "the practicalities and peculiarities of the case." *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314–15, 70 S.Ct.

(a) *Notice of overpayment and underpayment determination.* Whenever a determination concerning the amounts paid and payable for any period is made and it is found that, with respect to any month in the period, more or less than the correct amount was paid, written notice of the correct and incorrect amounts for each such month in the period will be sent to the individual against whom adjustment or recovery of the overpayment ... may be effected....

20 C.F.R. § 416.570.

**11.** A six year statute of limitations applies to suits for recovery of overpayments under the Social Security Act. *See United States v. Gravette Manor Homes,* 642 F.2d 231 (8th Cir.1981) (recovery of Medicare overpayments); *United States v. Dimeo,* 371 F.Supp. 95 (N.D.Ga.1974) (recovery of social security benefits paid to representative payee).

652, 657–58, 94 L.Ed. 865 (1950). Since the elderly and generally poor plaintiffs in this case justifiably rely on the Government to properly fix their OASDI benefits, they cannot be expected to seek professional services to review the checks and statements received each month. As a practical matter, the class members have no way of being apprised of their legal rights—in fact, would not even know that their legal rights were implicated—except through the notices they receive from the Government. Thus, if the Government fails to inform the plaintiffs of the prohibitions of section 207(a) and the statute of limitations defense, the plaintiffs will suffer from deprivation of their benefits.

Notices informing debtors of their legal rights as a due process requirement are not a new phenomenon in the law. Courts have required such information in communications from private creditors to debtors. *See Finberg v. Sullivan,* 634 F.2d 50, 62 (3d Cir.1980); *Deary v. Guardian Loan Co., Inc.,* 534 F.Supp. 1178 (S.D.N.Y.1982).

In *Finberg, supra,* plaintiff's creditor, a bank, sought to garnish plaintiff's checking and savings accounts, in which the total sum of money had been derived solely from social security retirement benefits. In discussing the notice informing the plaintiff of the attempt to garnish her property, the court found a violation of due process when the creditor failed to tell the plaintiff of the exemption under the federal and state laws for social security benefits. The court specifically noted the lack of knowledge of these laws by most people and the inability of many debtors, particularly those with scarce funding sources, to contact lawyers before their property is garnished. *Id.* at 62.

In *Deary, supra,* our Court granted partial summary judgment to the class of plaintiffs whose income, including social security benefits, was garnished by banks without notice of exemptions (or procedures for asserting them) to which the class was entitled and without a prompt opportunity for a hearing. The court observed that notice which failed to advise plaintiffs of the law regarding exemptions could leave the plaintiffs "deprived of the use of the property despite the theoretical availability of relief." The Court concluded that such notice was unconstitutional. *Id.* at 1188.

We find that the importance of including legal information clearly and simply presented regarding the prohibitions of section 207(a) and the statute of limitations defense is at least as compelling in this case where the Government is the creditor as is the notice of the law required in *Finberg* and *Deary,* both of which involved private creditors. This conclusion is particularly compelling in light of the Supreme Court's recognition that a state is not in a preferred position compared to any other creditor when it is performing its duty to take care of the needy. *Philpott v. Essex County Welfare Board,* 409 U.S. 413, 416, 93 S.Ct. 590, 592, 34 L.Ed.2d 608 (1978). Put another way, the risk of error inherent in notices which fail to inform social security recipients of the law, together with both the proportionately large deprivation of necessary monies that many beneficiaries would repay and the relatively low cost to the Government of informing plaintiffs of the law, *Mathews v. Eldridge, supra,* 424 U.S. at 335, 96 S.Ct. at 903, weigh heavily in favor of including information in simple terms about section 207(a) and the statute of limitations in notices sent to the class members.[12]

---

**12.** On this point we differ from the decisions of *McDaniels v. Heckler,* 571 F.Supp. 880 (D.Md. 1983); and *McDaris v. Svahn,* CV F 82–459 EDP (E.D.Cal., Feb. 4, 1983), both of which concerned facts identical to those in the instant case. In *McDaniels* and *McDaris,* the courts found that due process did not require notice to the plaintiffs of the statute of limitations. Citing no authority, the *McDaniels* court concluded

that as long as the plaintiff is notified that the decision to pay back is voluntary, the plaintiff need not be informed of statute of limitations defenses. Also citing no authority, the *McDaris* court determined that it would be impractical and confusing to require the Government to inform recipients of all their legal defenses and that the administrative procedures provide for problems in recipients' files. We believe that

Defendants distinguish the *Finberg* and *Deary* cases from the instant situation on the ground that in the former two cases garnishment was executed without voluntary agreement by the debtors whereas here, the plaintiffs must voluntarily choose to repay through OASDI income. We find first that any repayment directly through OASDI withholdings, whether voluntary or involuntary, violates section 207(a), and second, that any decision to independently repay the Secretary, made without knowledge of legal defenses, is fictitious and therefore not a voluntary choice at all.

The Secretary also cites cases which state that the statute of limitations is a personal, affirmative defense which must be asserted by the party to whom it is available. *See, e.g., Kalmich v. Bruno,* 553 F.2d 549 (7th Cir.), *cert. denied,* 434 U.S. 940, 98 S.Ct. 432, 54 L.Ed.2d 300 (1970); *Lahr v. Adell Chemical Co.,* 300 F.2d 256 (1st Cir.1962). However, none of the cases the Secretary cites concern the special relationship of debtor and creditor, in which the probability of deprivation of property ranks high. We think the inclusion of the statute of limitations defense and the possibility that partial payment or written acknowledgement might revive the statute if it has run, is an essential mandate of procedural due process in the context of this case.

■ We conclude that the Secretary must send to all class members notices which advise them of the overpayment, the time period during which it occurred, the amount of overpayment in each time period, any prior repayments, the reason for the overpayment, appeal and waiver

rights,[13] and legal rights including the section 207(a) prohibitions and the statute of limitations. The notices must be written in language comprehensible to an average layperson; they must be "reasonably calculated to convey the required information." *Mathews v. Eldridge, supra* 424 U.S. at 335, 96 S.Ct. at 903.

*Retroactive Relief*

■ We turn finally to plaintiffs' request seeking the return of OASDI benefits withheld by the Secretary as well as monies paid as a result of the Government's unconstitutional notices. We find that mandamus jurisdiction, on which this case is predicated, does not confer on the district courts the authority to award relief and that the remedy of retroactive payments is not appropriate in the circumstances of this case.

Our Court of Appeals has repeatedly held that mandamus jurisdiction lies to assert claims which are essentially procedural in nature. See *Dietsch v. Schweiker,* 700 F.2d 865, 868 (2d Cir.1983); *Ellis v. Blum,* 643 F.2d 68, 82 (2d Cir.1981); *White v. Mathews,* 559 F.2d 852, 856 (2d Cir.), *cert. denied,* 435 U.S. 908, 98 S.Ct. 1458, 55 L.Ed.2d 500 (1981). We entertain no doubt that the determination of both the legality of cross-program recovery, as a means for the SSA Secretary to recoup overpayments, and the constitutionality of the notices sent to the OASDI recipients are procedural questions. However, the issue of whether or not plaintiffs are entitled to benefits is substantive in nature, one which Congress left to the Social Security administrative process to address,[14] not to district courts

the statute of limitations is a significant defense about which most non-lawyers would never imagine pleading, and it is thus distinguishable from a variety of other defenses. Furthermore, the members of the plaintiff class who received as a first notice the "For Your Convenience" form did not even know they had a right to appeal; the administrative procedures were not available to them.

**13.** Although some class members received notices informing them of their appeal and waiver rights prior to receiving the "For Your Convenience" notice, the defendant does not seem to

be able to identify specifically who did and who did not receive the first notice. It is generally true that due process does not require a procedure done constitutionally to be repeated, *see Goldberg v. Kelly,* 397 U.S. 254, 267 n. 14, 90 S.Ct. 1011, 1020 n. 14, 25 L.Ed.2d 287 (1970), but an exception may be made when some people will be denied due process altogether if others do not receive two notices.

**14.** Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), confers on the district courts jurisdiction over establishment of benefits cases in which the Secretary has issued a final deci-

hearing claims under mandamus jurisdiction. *See Dietsch v. Schweiker, supra,* at 868; *Ellis v. Blum, supra,* at 82; *White v. Mathews, supra,* at 856. Accordingly, we have no jurisdiction to grant plaintiffs' request for retroactive benefits.

Moreover, even if we did have jurisdiction over the retroactive benefits claim, such a remedy would be entirely inappropriate in the instant case. In *Chevron Oil v. Hudson,* 404 U.S. 97, 92 S.Ct. 349, 30 L.Ed.2d 296 (1971), the Supreme Court set forth the seminal test of nonretroactivity:

> In our cases dealing with the non-retroactivity question, we have generally considered three separate factors. First, the decision to be applied non-retroactively must establish a new principle of law, either by overruling clear past precedent on which litigants may have relied, *see e.g., Hanover Shoe, Inc. v. United Shoe Machinery Corp., supra,* 392 U.S. [481], at 496, 88 S.Ct. [2224], at 2233 [20 L.Ed.2d 1231], or by deciding an issue of first impression whose resolution was not clearly foreshadowed, *see, e.g., Allen v. State Board of Elections, supra,* 393 U.S. [544], at 572, 89 S.Ct. [817], at 835 [22 L.Ed.2d 1]. Second, it has been stressed that "we must ... weigh the merits and demerits in each case by looking to the prior history of the rule in question, its purpose and effect, and whether retrospective operation will further or retard its operation." *Linkletter v. Walker, supra,* 381 U.S. [618], at 629, 85 S.Ct. [1731], at 1738 [14 L.Ed.2d 601]. Finally, we have weighed the inequity imposed by retroactive application, for "[w]here a decision of this Court could produce substantial inequitable results if applied retroactively, there is ample basis in our cases for avoiding the 'injustice or hardship' by a holding of nonretroactivity." *Cipriano v. City of Houma, su-*

*pra,* 395 U.S. [701], at 706, 89 S.Ct. [1897], at 1900 [23 L.Ed.2d 647].

404 U.S. at 106–107, 92 S.Ct. at 355.

An application of the *Chevron Oil* test to the instant case advises us that the awarding of retroactive relief is inappropriate.

■ The first prong of the *Chevron Oil* test requires that a new legal concept be established by the decision to be applied nonretroactively. Our opinion is deciding for the first time both that cross-program recovery, whether voluntary or involuntary, is illegal and that the Secretary's notices violated due process. Nonretroactivity is applicable in these circumstances. *See Chevron Oil v. Hudson, supra,* at 107, 92 S.Ct. at 355; *Jimenez v. Weinberger,* 523 F.2d 689, 703–04 (7th Cir.1975), *cert. denied,* 427 U.S. 912, 96 S.Ct. 3200, 49 L.Ed.2d 1204 (1975); *Novak v. Harris,* 504 F.Supp. 101, 104 (E.D.N.Y.1980).

The second requirement of nonretroactivity focuses on whether retrospective operation will enhance or deter the history, purpose and effect of the rule at issue. As discussed at length above, the purpose of section 207(a) is to protect beneficiaries from creditors' claims. Those recipients who repaid benefits after receiving the notices were deprived of that protection and forced to consume other assets in their struggle to maintain their compelled standard of living. See *Jimenez v. Weinberger,* 523 F.2d 689, 703 (7th Cir.1975) (second factor of *Chevron* test weighed in favor of illegitimate children of disabled insured who were born after the disability's onset and who were denied disability benefits); *Novak v. Harris,* 504 F.Supp. 101, 105 (E.D.N.Y.1980) (second factor weighed in favor of plaintiff who was denied retroactive payment of social security widower's benefits). It is also true, however, that as time wears on and the hardships of repayment wear off, retroactive payments serve compensatory, not remedial, functions.

---

sion. We decline to find that section 205(g) is the basis of jurisdiction in this case since many members of the plaintiff class who admittedly received a notice, prior to the "For Your Convenience" letter, informing them of their right to

appeal failed to do so. Consequently, those members did not exhaust their administrative remedies, which they were required to do in order to receive any benefit payments and before seeking a district court determination.

*See Rivers by Rivers v. Schweiker,* 692 F.2d 871, 873–74 (2d Cir.1982), *cert. denied,* — U.S. ——, 103 S.Ct. 1783, 76 L.Ed.2d 353 (1983); *Rothstein v. Wyman,* 467 F.2d 226, 234–35 (2d Cir.1972), *cert. denied,* 411 U.S. 921, 93 S.Ct. 1552, 36 L.Ed.2d 315 (1973). In the case at hand, at least one and a quarter years have passed since those plaintiffs who withheld benefits last repaid the Secretary. Present payments by the Government of retroactive benefits would do nothing to enhance the protection of beneficiaries from creditors claims, nor would such current payments restore past needs. Our analysis of the second *Chevron Oil* factor leads us to conclude that nonretroactivity is appropriate.

Similarly, the third and last element of the *Chevron Oil* test, which requires a balancing of the equities of retroactive application, yields a determination in favor of nonretroactivity. Had the named plaintiff not been joined by a class, the overall cost to the Government of retroactive payment would be insubstantial. See *Novak v. Harris,* 504 F.Supp. 101, 106 (E.D.N.Y.1980). However, a multiplication of that minimal amount by the thousands of beneficiaries who repaid some part of the SSI overpayments results in an expensive and undue burden on the Government. Furthermore, the repayment of benefits by the Government would entail the development of procedures designed for that purpose, equipped with new notices, new training of staff, and other operations, all of which would cause the already high cost to skyrocket. We find that the equities tip in favor of the Government on the third part of the Supreme Court's nonretroactivity test.

In sum, retroactive payments are an inappropriate form of relief in this motion for partial summary judgment. Our Court has no jurisdiction to hear a claim for such payments and, in any case, retroactivity is inapplicable under *Chevron Oil.*

### III. *Conclusion*

Based on the facts and the law here presented, we are compelled to grant plaintiffs' motion for partial summary judgment with respect to members of the BDMP group only. We do so by virtue of our determination reflected herein on the issues of the illegality of cross-program recovery and the unconstitutionality of the notices sent to the beneficiaries by the Government. We deny the motion addressed to the repayment by the Government of retroactive benefits.

SO ORDERED.